12555

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DON PRESTON, JOSEPH CORTESI, ERIC CHMURA, GILBERT HUERAMO, II, and ROBERT HOSELTON, ) ) ) ) | |
| Plaintiffs, ) | |
| ) | Case No.: 20 CV 4272 |
| v. ) | |
| ) | Judge: |
| DAVID WIEGAND, Chief of Police for the ) Village of Crestwood, IL, in his individual ) and official capacities; Deputy Chief and ) Director of Operations, DAVID ) ALEXANDER, in his individual and ) official capacities; Commander CHRIS ) SPENCER, in his individual and official ) capacities; Commander RICHARD ) WYMAN, in his individual and official ) capacities; Detective Sergeant MICHAEL ) COUTRE, in his individual and official ) capacities; Mayor LOUIS PRESTA, in his ) individual and official capacities; the ) VILLAGE OF CRESTWOOD, IL a ) municipal Corporation; the VILLAGE OF ) CRESTWOOD BOARD OF FIRE AND ) POLICE COMMISSIONERS; former ) Village of Crestwood Board of Fire and ) Police Commissioners Chairman, ROB ) LYONS, in his individual capacity; current ) Village of Crestwood Board of Fire and ) Police Commissioners Chairman FRANK ) CALDARIO, in his individual capacity; ) current Village of Crestwood Board of Fire ) and Police Commissioner, JOSEPH ) ZANGARA, in his individual capacity; and ) current Village of Crestwood Board of Fire ) and Police Commissioner, JAMES ) FOWLER, in his individual capacity, ) ) | Magistrate Judge:<br><br>JURY TRIAL DEMANDED |
| Defendants. ) | |

1

## COMPLAINT

NOW COME the Plaintiffs, DON PRESTON, JOSEPH CORTESI, ERIC CHMURA, GILBERT HUERAMO, II, and ROBERT HOSELTON, by and through one of their attorneys, Laura L. Scarry of DeANO & SCARRY, LLC., and complaining against DAVID WIEGAND, Chief of Police for the Village of Crestwood, IL, in his individual and official capacities; Deputy Chief and Director of Operations, DAVID ALEXANDER, in his individual and official capacities; Commander CHRIS SPENCER, in his individual and official capacities; Commander RICHARD WYMAN, in his individual and official capacities; Detective Sergeant MICHAEL COUTRE, in his individual and official capacities; Mayor LOUIS PRESTA, in his individual and official capacities; the VILLAGE OF CRESTWOOD, IL, a municipal corporation; the VILLAGE OF CRESTWOOD BOARD OF FIRE AND POLICE COMMISSIONERS; former Village of Crestwood Board of Fire and Police Commissioners Chairman, ROB LYONS, in his individual capacity; current Village of Crestwood Board of Fire and Police Commissioners Chairman FRANK CALDARIO, in his individual capacity; current Village of Crestwood Board of Fire and Police Commissioner, JOSEPH ZANGARA, in his individual capacity; and current Village of Crestwood Board of Fire and Police Commissioner, JAMES FOWLER, in his individual capacity, state the following:

### Nature of the Action

1.      This is an action for monetary damages and declaratory relief for violations of Plaintiffs' civil rights via 42 U.S.C. § 1983 under the First Amendment and Fourteenth Amendments of the United States Constitution and Illinois state law. This is also a petition for administrative review as it pertains to Plaintiff, Robert Hoselton.

**Jurisdiction and Venue**

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, § 1334 and § 1367.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims herein occurred, and the Plaintiffs reside within this district.

**Parties**

4.      Plaintiff Don Preston ("Preston" or "Plaintiff") was employed by the Village of Crestwood Police Department beginning in 2016. In January 2019, despite being hired as a part-time officer, he began working full-time hours for the Village as a supervisor for the day shift and was promoted to corporal in April 2019. Notwithstanding satisfactorily performing his duties throughout his employment, Preston was unlawfully terminated on October 29, 2019. At all relevant times, he resided in Cook County, Illinois.

5.      Plaintiff Joseph Cortesi ("Cortesi" or "Plaintiff") was employed by the Village of Crestwood Police Department as a part-time police officer beginning the spring of 2017. In November 2017 despite being hired as a part-time officer, he began working full-time hours for the Village. On May 3, 2019 he was promoted to corporal. Nothwithstanding satisfactorily performing his duties throughout his employment, Cortesi was unlawfully terminated on October 31, 2019. At all relevant times, he resided in Cook County, Illinois.

6.      Plaintiff Eric Chmura ("Chmura" or "Plaintiff") was employed by the Village of Crestwood Police Department as a part-time police officer beginning the summer of 2013. Chmura was also employed by the Village of New Lenox as a full-time fire fighter since 2012. Despite satisfactorily performing his duties throughout his employment with the Village of Crestwood, Chmura was unlawfully terminated on or about October 14, 2019. At all relevant

times, he resided in Will County, Illinois.

7.     Plaintiff Gilbert Hueramo, II ("Hueramo" or "Plaintiff") was employed by the Village of Crestwood Police Department as a part-time police officer beginning on November 22, 2017. Despite satisfactorily performing his duties throughout his employment, Hueramo was unlawfully terminated on September 30, 2019. At all relevant times, he resided in Cook County, Illinois.

8.     Plaintiff Robert Hoselton ("Hoselton" or "Plaintiff") was employed by the Village of Crestwood Police Department beginning February 17, 2011 as a part-time officer. On November 7, 2013, Hoselton became a full-time officer and was later promoted to Corporal. Despite satisfactorily performing his duties throughout his employment, Hoselton was unlawfully terminated on June 19, 2020. At all relevant times, he resided in Cook County, Illinois.

9.     The Village of Crestwood, Illinois ("Village") is a municipality incorporated under the laws of the State of Illinois.

10.    At all relevant times, Defendant David Weigand ("Chief Weigand" or "Defendant"), acted under color of law as the Chief of Police for the Village of Crestwood. Chief Weigand is sued in his individual capacity for inflicting upon Plaintiffs the injuries described throughout the complaint. Defendant Weigand is also a policy maker possessing final decision making authority with respect to various matters at issue in this complaint and, as such, is sued in his official capacity.

11.    At all relevant times, Defendant David Alexander ("Alexander" or "Defendant"), acted under color of law as a Deputy Chief and Director of Operations for the Village of Crestwood Police Department. Alexander is sued in his individual and official capacities for inflicting upon Plaintiffs the injuries described throughout the complaint.

4

12.     At all relevant times, Defendant Chris Spencer ("Spencer" or "Defendant"), acted under color of law as a Master Sergeant, then Lieutenant and then Commander for the Village of Crestwood Police Department. Spencer is sued in his individual and official capacities for inflicting upon Plaintiffs the injuries described throughout the complaint.

13.     At all relevant times, Defendant Richard Wyman ("Wyman" or "Defendant"), acted under color of law as a Master Sergeant, then Lieutenant and then Commander for the Village of Crestwood Police Department. Wyman is sued in his individual and official capacities for inflicting upon Plaintiffs the injuries described throughout the complaint.

14.     At all relevant times, Defendant Michael Coutre ("Coutre" or "Defendant"), acted under color of law as a Detective Sergeant for the Village of Crestwood Police Department. Coutre is sued in his individual and official capacities for inflicting upon Plaintiffs the injuries described throughout the complaint.

15.     At all relevant times, Defendant Louis Presta ("Mayor Presta" or "Defendant"), acted under color of law as the Mayor for the Village of Crestwood. Mayor Presta is sued in his individual capacity for inflicting upon Plaintiffs the injuries described throughout the complaint. Defendant Presta is also a policy maker possessing final decision making authority with respect to various matters at issue in this complaint and, as such, is sued in his official capacity.

16.     Defendant, Village of Crestwood Board of Fire and Police Commissioners ("BOFPC"), at all times relevant to the matter set forth herein was the administrative agency responsible for the discipline, hiring, promotion, and termination of sworn full-time police officers for the Village of Crestwood.

17.     Defendant, Rob Lyons, was the Chairman of the Village of Crestwood BOFPC from approximately November 26, 2019 until or about February 26, 2020. Prior to becoming

Chairman, he served the BOFPC in 2019 as a commissioner. Former Chairman Lyons is sued in his individual capacity for inflicting upon Plaintiffs the injuries described throughout the complaint.

18.    Defendant, Frank Caldario, served as a commissioner for the Village of Crestwood BOFPC in 2019. On February 26, 2020, Defendant Caldario was nominated by the Village of Crestwood BOFPC to be Chairman and continues to serve in that capacity. Chairman Caldario is sued in his individual capacity for inflicting upon Plaintiffs the injuries described throughout the complaint.

19.    Defendant, Joseph Zangara, at all times relevant to the matters set forth herein was a commissioner for the Village of Crestwood BOFPC and continues to serve in that capacity. Defendant Zangara is sued in his individual capacity for inflicting upon Plaintiffs the injuries described throughout the complaint.

20.    Defendant, James Fowler, was appointed commissioner for the Village of BOFPC in February 2020 and continues to serve in that capacity. Commissioner Fowler is sued in his individual capacity for inflicting upon Plaintiffs the injuries described throughout the complaint.

**Facts**

21.    The Village of Crestwood employs full-time and part-time police officers. The bulk of the police department is comprised of part-time police officers. As of at least 2018 and continuing to the present, the Village employs approximately 35 part-time officers, and seven (7) full-time officers to include Defendant Weigand as the Chief of Police.

22.    Since 2018, Defendant Weigand's administrative staff included, but was not limited to, Defendants Alexander, Spencer, and Wyman, who worked part-time until January 2020 when each of them was promoted to full-time positions. From 2018, and continuing

6

thereafter, Defendants Alexander, Spencer, and Wyman supervised and directed full-time and part-time police officers.

23.     During Weigand's tenure as Chief of Police, he showed favoritism by rewarding and/or promoting Village police officers and members of his administrative staff who never questioned him, were loyal to him and did his bidding. Many of those individuals Weigand rewarded engaged in unethical and sometimes criminal activity during his tenure yet he and the Village covered up for and/or turned a blind eye to those activities. Weigand also would enlist the assistance of one or more of the Defendants to cover up the unethical and/or unlawful actions of favored officers/staff members. On the other hand, any Village officer who questioned Weigand's favoritism, otherwise crossed him, or refused to toe the line on his behalf was subject to arbitrary punishment.

24.     Several Village police officers including Plaintiffs spoke out about Chief Weigand and his administrative staff's ("police administration's") inconsistent, arbitrary and oftentimes unlawful treatment of officers, the Village and police administration's turning a blind eye to the unethical and unlawful behavior by Defendant Weigand's favored officers, and other matters of public concern.

25.     Beginning in the late spring and early summer 2019 and in response to the police administration's treatment of its officers, Plaintiffs and other officers discussed unionizing on behalf of the part-time and full-time officers.

26.     On June 27, 2019, Plaintiffs Preston, Hueramo, and Hoselton, met with an officer of Illinois Council of Police ("ICOPS") to discuss the unionization process for the Village's full-time and part-time police officers. During that meeting, they obtained collective bargaining authorization cards ("authorization cards") to pass out to the Village's full-time and part-time

officers for their signatures.

27.     Hoselton took responsibility of meeting with and discussing unionization on behalf of the full-time officers while Preston and Hueramo met with the part-time officers. They collected authorization cards from 28 part-time officers; however, they did not obtain enough authorization cards on behalf of the full-time officers.

28.     On July 8, 2019, ICOPS filed a majority interest representation/certification petition on behalf of the part-time officers with the Illinois Labor Relations Board (Labor Board).

29.     On or about July 15, 2019, the Village received a notice from the Labor Board of the ICOPS union petition. The union petition was discussed at a Village Board meeting the following day.

30.     The Labor Board certified ICOPS as the exclusive bargaining unit for the Village's part-time police officers on or about August 1, 2019.

31.     Upon information and belief, shortly before and immediately upon receipt of the union petition and continuing over the next several months, Defendants Presta, Weigand, Alexander, Spencer and Wyman discussed the petition and various ways, manners and methods in which to "bust" the union.

32.     Immediately following receipt of the union petition and for the next several months, Defendants Weigand, Alexander, Spencer, Wyman and Coutre engaged in a campaign of intimidation, threats and coercion upon Plaintiffs and other Village police officers in an effort to "bust" the union including, but not limited to, demanding the names of any officer who supported the union and/or signed a card in favor of unionizing, making intimidating remarks that those individuals would be "marked," have a "target on their backs," or on a "hit list," and threatening those individuals would face consequences including bodily injury, termination and/or non-

reappointment.

33.     Upon information and belief, Defendants Weigand, Alexander, Spencer and Wyman enlisted several of Plaintiffs' acquaintances and colleagues outside of the Village's employ to pressure Plaintiffs and other Village pro-union officers to renege on their desire to unionize.

34.     On or around July 15, 2019, Defendant Spencer telephoned Cortesi, who was in the presence of Preston, and demanded to know who signed union authorization cards, threatened the lives of other union supporters, and threatened Cortesi that he and others would be fired immediately or not re-appointed November 1st if they were involved in any way with bringing in the union. Over the course of the next week, Defendants Spencer and Wyman continued to question Cortesi about his support and involvement with the union warning him that he would suffer negative consequences if he was involved.

35.     On July 16, 2019, Defendant Wyman telephoned Hueramo and questioned him about his union involvement, the involvement of others, and threatened that those involved would be "marked."

36.     On July 26, 2019, while off-duty, Hoselton met with a full-time officer to discuss unionization of the Village's full-time officers. Upon information and belief, that officer informed Defendants Weigand, Alexander, Wyman, and Spencer regarding his conversation with Hoselton. In retaliation, and over the course of the next three weeks, Defendant Weigand twice demanded Hoselton's resignation.

37.     On August 12, 2019, Cortesi and Hueramo were removed from their previously held roles of "Lead Officer." Hueramo was also removed from his position as a Firearms Trainer. Cortesi and Hueramo performed their jobs satisfactorily and there was no legitimate reason for

their removal from these positions.

38.     On August 21, 2019 Hueramo, while off-duty, met with Defendant Wyman in Alsip, Illinois to explain to him the reasons the majority of the Village's police officers supported the union.

39.     In mid-September while working at his side job, Cortesi was questioned by a coworker about his involvement in the union and was warned that Defendant Weigand had "very long political arms and can and will ruin your police career" if Weigand learned Cortesi had anything to do with any efforts to unionize.

40.     On September 17, 2019, at the direction of Defendants Weigand, Alexander, Spencer and Wyman, Defendant Coutre sent an email to the Village's police officers including auxiliary officers notifying them of a meeting at the Crestwood "Biela" Center on September 21, 2019 to discuss the unionization of the Village's police officers. Although Coutre did not specify the meeting was mandatory, those who received the email knew that if they did not attend, they would face negative repercussions from the Defendants. Indeed, upon information and belief, Defendant Weigand ordered several officers to attend the meeting.

41.     Defendants Alexander, Spencer, Wyman and Coutre attended the September 21st meeting on behalf of Defendant Weigand and circulated an anti-union petition for the signature of everyone in attendance. Despite the presence of several officers who supported the union, they were coerced, intimidated and threatened to sign the anti-union petition or risk losing their jobs. Defendants physically stood over many officers present to ensure they signed the petition.

42.     Following the September 21, 2019 union-busting meeting, Defendants Weigand, Alexander, Spencer and Wyman continued to pressure the Village's police officers to sign the anti-union petition or otherwise bust the union. Plaintiffs Preston, Cortesi, Chmura and Hueramo

did not attend the meeting, nor did they sign the petition.

43.     Shortly before the first meeting/negotiations between the union and Village which was scheduled for September 30, 2019, a union officer was so intimidated by the actions of Defendants Weigand, Alexander, Spencer, Wyman and Coutre that he decided to step down as a union officer/representative.

44.     Plaintiff Hueramo and another Crestwood police officer attended the September 30, 2019 meeting on behalf of the union along with an ICOPS representative and attorney. Attorneys representing the Village attended the meeting without other representatives from the Village.

45.     Within minutes of the meeting's conclusion, Plaintiff Hueramo was called into Defendant Alexander's office after which Hueramo was immediately terminated. Hueramo was terminated due to his pro-union stance, including his union authorization signature, and his refusal to sign anti-union paperwork.

46.     After September 30, 2019, Defendants Weigand, Alexander, Spencer and Wyman continued their campaign of coercion, intimidation and threats against officers to sign the "anti-union" petition. Several Village police officers signed the anti-union petition under duress. Other pro-union officers reneged on their stance fearing retaliation from these Defendants and/or the Village.

47.     On or about October 14, 2019, Chumra was terminated from his part-time police officer role due to his pro-union stance, including his union authorization signature, and his refusal to sign anti-union paperwork.

48.     On October 29, 2019, Preston was terminated due to his pro-union stance, including his union authorization signature, and his failure to sign anti-union paperwork.

11

49.     On October 31, 2019, Cortesi was terminated due to his pro-union stance, including his union authorization signature, and his refusal to sign anti-union paperwork.

50.     Upon information and belief, other Village police officers have experienced and/or witnessed retaliatory actions by Defendants Weigand, Alexander, Spencer, Wyman and Coutre but are afraid to get involved due to fear of retaliation.

51.     Historically, the Village of Crestwood Police Department would from time to time operate their patrol shifts short-staffed. But, following the unlawful terminations, non-reappointments and/or the exodus of police officers leaving the Village's employment to escape the hostile anti-union environment as described above, the Village's police officer staffing levels became dangerously low. As a result, the safety of Village residents became vulnerable due to their exposure to potential criminal activity left undetected by the Village's Police Department.

52.     Disgusted with Defendant Weigand's unscrupulous conduct and interference with the responsibilities of the Village of Crestwood Board of Fire and Police Commission's ("BOFPC") in hiring, firing and promoting the Village's police officers, Robert Sauser resigned from his position as BOFPC Chairman on October 22, 2019. Mr. Sauser memorialized his resignation in a scathing two-page letter to Defendant Mayor Presta outlining Defendant Weigand's misconduct, attached hereto as Exhibit A, and copied to the Crestwood Village Clerk, each Village Trustee, the Village Service Director and BOFPC co-commissioners.

53.     Mr. Sauser's resignation letter raised serious ethical and legal questions regarding the testing, hiring, promotional and supervisory practices within the Village's Police Department under Defendant Weigand's watch. Yet, the Village deliberately ignored the questionable practices occurring within the police department and willfully failed to conduct a reasonable inquiry or legitimate investigation into these issues.

12

54.     Following Mr. Sauser's resignation, the Village appointed Defendant Rob Lyons to fill the vacancy knowing an actual or perceived conflict of interest existed between Mr. Lyons and the Village in violation of Illinois law.

55.     Specifically, Defendant Lyons' appointment as a commissioner of the Village of Crestwood BOFPC violated 50 ILCS 105/3(a) of the Public Officer Prohibited Activities Act which states in pertinent part:

> No person holding any office, either by election or appointment under the laws or Constitution of this State, may be in any manner financially interested directly in his own name or indirectly in the name of any other person, association, trust, or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. . . . Nor may any such officer take or receive, or offer to take or receive, either directly or indirectly, any money or other thing of value as a gift or bribe or means of influencing his vote or action in his official character. Any contract made and procured in violation hereof is void.

56.     The appointment of Lyons to commissioner of the Village of Crestwood BOFPC in violation of Illinois law constitutes a continuation of the custom and practice by the Village to appoint individuals to the BOFPC who are beholden to, and/or will do the bidding of, Defendant Weigand, Defendant Presta and the Village of Crestwood in terms of the hiring, firing and/or promotion of its police officers.

57.     As a reward for their union busting activities, Defendant Weigand recommended to the Village that Defendants Alexander, Spencer, and Wyman be hired and/or promoted to full-time positions, and on December 19, 2019, the Village conditionally approved Weigand's recommendation thereby circumventing the legitimate hiring and/or promotion process conducted by the Village BOFPC. On January 8, 2020, the Defendant Mayor and Defendant Village of Crestwood approved and ratified Weigand's recommendations.

58.     Defendant members of the BOFPC, Lyons, Caldario, and Zangara, conspired with

Defendant Weigand and/or went along with Defendant Weigand's recommendation and tacitly approved the Defendant Mayor and Village of Crestwood's ratification of Weigand's recommendation despite their circumvention of the BOFPC's legitimate hiring and/or promotion process.

59.    As further retaliation against Plaintiffs Preston, Cortesi, and Chmura for supporting the union, Defendants Presta, Weigand, Alexander, Spencer and Wyman conspired to and/or did file a verified civil complaint against them on January 22, 2020 in the Cook County Circuit Court, Municipal Department, Fifth District, knowing the allegations contained therein were false. These same Defendants knew that by filing said complaint, it would tarnish the reputations of these Plaintiffs and force them to retain an attorney to defend against the claims as well as restore their reputations.

## COUNT I

### 42 U.S.C. § 1983
### First Amendment Retaliation for Speech on a Matter of Public Concern
### All Plaintiffs v. All Defendants

60.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

61.    Plaintiffs' statements made regarding Defendant Weigand's and his administrative staff's inconsistent, arbitrary and oftentimes unlawful treatment of officers, their turning a blind eye to other officers' unethical and unlawful behavior, and the unionization of the Village's police officers were matters of public concern.

62.    Defendants knew said matters were constitutionally protected when they took adverse actions against Plaintiffs.

63.    Plaintiffs are victims of retaliation by the Defendants for speaking out regarding

14

these matters of public concern.

64.     As a direct result of Plaintiffs' speaking out regarding matters of public concern, the Defendants' engaged in a campaign of harassment, intimidation, and retaliation directed at Plaintiffs, and caused a chilling effect on the interests of Plaintiffs and other Village police officers to speak out on matters of public concern.

65.     Defendants' conduct was intentional, retaliatory, and malicious, accompanied by ill will and done for the purpose of injuring Plaintiffs thereby subjecting them to liability for punitive damages.

66.     The false, malicious, and retaliatory acts of the Defendants have resulted in extreme humiliation and embarrassment to Plaintiffs, have diminished their reputations in the community, and have precluded their future employment as police officers.

67.     The acts of the Defendants have resulted in severe emotional pain, suffering and distress, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

68.     Further, as a direct and proximate result of the Village's unconstitutional policy as promulgated by Chief Weigand as an individual with final policymaking authority, Plaintiffs suffered a deprivation of their interests to speak out on matters of public concern in violation of the First Amendment.

WHEREFORE, Plaintiffs request that judgment be entered against all of the Defendants, jointly and severally, for compensatory damages in an amount to be determined by a jury, punitive damages against the individually-named Defendants, interest on Plaintiffs' compensatory damages at a rate set by law, reasonable costs and attorneys' fees incurred in bringing this action, an injunction barring any future retaliation against the Plaintiffs,

reinstatement, and for such other and further relief as the Court and/or jury deems proper.

## COUNT II

**42 U.S.C. § 1983**
**First Amendment Retaliation for Union Activity**
**All Plaintiffs v. All Defendants**

69.     Each of the paragraphs of this Complaint is incorporated as if restated fully

herein.

70.     Plaintiffs engaged in constitutionally-protected activity when they met with a

union representative to discuss unionization, obtained union authorization cards, obtained

signatures on union authorization cards from members of the Village's police department,

unionized, and attended union negotiation meetings.

71.     Plaintiffs have a constitutional and statutory right to freely associate with a union.

72.     Plaintiffs are victims of retaliation by the Defendants for engaging or otherwise

participating in union activity.

73.     As a direct result of Plaintiffs' association with a union, the Defendants' engaged

in a campaign of harassment, intimidation, and retaliation directed at Plaintiffs, and caused a

chilling effect on the interests of Plaintiffs and other Village police officers to associate with the

union.

74.     Defendants' conduct was intentional, retaliatory, and malicious, accompanied by

ill will and done for the purpose of injuring Plaintiffs thereby subjecting them to liability for

punitive damages.

75.     The false, malicious, and retaliatory acts of the Defendants have resulted in

extreme humiliation and embarrassment to Plaintiffs, have diminished their reputations in the

community, and have precluded their future employment as police officers.

16

76.     The acts of the Defendants have resulted in severe emotional pain, suffering and distress, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

77.     Further, as a direct and proximate result of the Village's unconstitutional policy as promulgated by Chief Weigand as an individual with final policymaking authority, Plaintiffs suffered a deprivation of their interests to speak out on matters of public concern in violation of the First Amendment.

WHEREFORE, Plaintiffs request that judgment be entered against all of the Defendants, jointly and severally, for compensatory damages in an amount to be determined by a jury, punitive damages against the individually-named Defendants, interest on Plaintiffs' compensatory damages at a rate set by law, reasonable costs and attorneys' fees incurred in bringing this action, an injunction barring any future retaliation against the Plaintiffs, reinstatement, and for such other and further relief as the Court and/or jury deems proper.

## COUNT III

**42 U.S.C. § 1983**
**Conspiracy to Retaliate**
**All Plaintiffs v. All Individual Defendants**

78.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

79.     In an effort to deprive Plaintiffs of their constitutional rights as described in the previous paragraphs of this Complaint, the Defendants reached an agreement amongst themselves to retaliate against the Plaintiffs.

80.     In this manner, the Defendants, acting in concert with one another and other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

81.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts as described in this complaint and was an otherwise willful participant in joint activity.

82.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs' constitutional rights were violated.

83.     All of the Defendants acted intentionally and maliciously under color of law to deprive Plaintiffs of their rights.

84.     Defendants' conduct was intentional, retaliatory, and malicious, accompanied by ill will and done for the purpose of injuring Plaintiffs, thereby subjecting them to liability for punitive damages.

85.     The false, malicious, and retaliatory acts of the Defendants have resulted in extreme humiliation and embarrassment to Plaintiffs, have diminished their reputations in the community, and have precluded their future employment as police officers.

86.     The actions of Defendants in conspiring with one another to retaliate against Plaintiffs for speaking out on matters of public concern and for organizing and participating in a union have resulted in severe emotional pain, suffering and distress, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Plaintiffs request that judgment be entered against all of the Defendants, jointly and severally, for compensatory damages in an amount to be determined by a jury, punitive damages against the individually-named Defendants, interest on Plaintiffs' compensatory damages at a rate set by law, reasonable costs and attorneys' fees incurred in

bringing this action, an injunction barring any future retaliation against the Plaintiffs,

reinstatement, and for such other and further relief as the Court and/or jury deems proper.

## COUNT IV

### Retaliatory Discharge under Illinois State Law
### Hoselton v. Village of Crestwood

87.      Each of the paragraphs of this Complaint is incorporated as if restated fully

herein.

88.      On June 11, 2018, Hoselton injured his left bicep while on duty as a Village police

officer. He thereafter fully cooperated and complied with the Village's work accident and

reporting procedures.

89.      On June 21, 2018, Hoselton underwent surgery to repair his left bicep.

90.      On June 24, 2018, Hoselton retained legal counsel to represent him regarding his

workplace injury.

91.      Hoselton, through legal counsel, filed a lawsuit with the Illinois Workers'

Compensation Commission ("IWCC") on July 5, 2018 as case number 18 WC 019978.

92.      The IWCC sent the notice of lawsuit to the Village on July 6, 2018.

93.      Upon receipt of the notice of lawsuit, Defendant Weigand became angry and was

overheard by others shouting, "F*** Hoselton!"

94.      In retaliation for filing a workers' compensation lawsuit, Defendant Weigand

conspired with Defendants Alexander, Wyman, and Spencer to conduct one or more

investigations on Hoselton's police conduct and/or trump up disciplinary charges against him

when these Defendants turned a blind eye to the same or more egregious police conduct

committed by similarly-situated officers.

95.      After being served with several amended notices of interrogation, part-time

Detective Sergeant Soderland interrogated Hoselton on March 26, 2019. Hoselton was ordered to answer every question posed to him during the interrogation.

96.     After learning of Hoselton's involvement with the unionization of the Village's full-time officers and after ICOPS became the recognized bargaining unit for the Village's part-time officers in the summer 2019 as described in the preceding paragraphs, Defendant Weigand, conspired with Defendants Alexander, Wyman, and Spencer to file disciplinary charges against Hoselton before the BOFPC on or about October 22, 2019, nearly 7 months after his March 26, 2019 interrogation.

97.     The BOFPC hearing regarding the disciplinary charges against Hoselton eventually occurred on March 11-13, 2020 where the BOFPC members heard testimony that other similarly-situated officers engaged in similar or more egregious misconduct but were not disciplined.

98.     On June 19, 2020, the BOFPC terminated Hoselton's employment.

99.     Hoselton's termination was an illegal retaliatory discharge in violation of the Illinois Workers' Compensation Act ("IWCA") and Illinois common law.

100.     As a direct and proximate result of Defendants illegal retaliatory discharge of Hoselton as described above, Defendants violated Hoselton's rights under the IWCA and Illinois common law.

101.     All of the Defendants acted intentionally and maliciously under color of law to deprive Hoselton of his rights.

102.     Defendants' conduct was intentional, retaliatory, and malicious, accompanied by ill will and done for the purpose of injuring Hoselton, thereby subjecting them to liability for punitive damages.

103.     The false, malicious, and retaliatory acts of the Defendants have resulted in extreme humiliation and embarrassment to Hoselton, has diminished his reputation in the community, and has precluded his future employment as a police officer.

104.     The actions of Defendants against Hoselton has resulted in severe emotional pain, suffering and distress, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Hoselton requests that judgment be entered against all of the Defendants, jointly and severally, for compensatory damages in an amount to be determined by a jury, punitive damages against the individually-named Defendants, interest on Plaintiffs' compensatory damages at a rate set by law, reasonable costs and attorneys' fees incurred in bringing this action, an injunction barring any future retaliation against the Plaintiffs, reinstatement, and for such other and further relief as the Court and/or jury deems proper.

## COUNT V

### Administrative Review of BOFPC Decision
### Hoselton v. Chief Weigand and the BOFPC

105.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

106.     The hearing before the Defendant BOFPC was held in Cook County, Illinois.

107.     Judicial review of the decision and the proceedings that culminated therein are sought pursuant to the Illinois Administrative Review Act, 735 ILCS 5/3-101 *et seq*. because the BOFPC's decision is erroneous, contrary to the manifest weight of the evidence, and contrary to law.

21

108.    A Finding, Decision and Order was entered by the Defendant BOFPC on June 19, 2020 terminating Hoselton from his employment with the Village of Crestwood Police Department, a true and correct copy of which is attached hereto as Exhibit B.

109.    The Finding, Decision and Order shown in Exhibit B constitutes a final administrative decision of the Defendant BOFPC.

110.    This complaint for administrative review is timely in that it is filed within thirty-five (35) days after service of the June 19, 2020 Finding, Decision and Order in accordance with 735 ILCS 5/3-103.

111.    The BOFPC's decision to terminate Hoselton is contrary to the manifest weight of the evidenced in a myriad of respects including, but not limited to, the following:

a.      The evidence and testimony at the hearing established that Hoselton committed no offense warranting termination;

b.      Termination is clearly excessive based on the evidentiary record;

c.      Termination as a penalty amounts to selective enforcement of the Department's rules, in that other members committed equal and/or other more serious wrongdoing without termination;

d.      Termination as a penalty amounts to unconstitutional retaliation for engaging in protected activity, *inter alia*, retaining counsel and filing a workers' compensation lawsuit, engaging in speech on matters of public concern, engaging in union activity and associating with a union; and

e.      The BOFPC considered evidence that was not admitted or admissible.

112.    Hoselton specifies that the entire transcript of the hearings, including video and audio transmissions and exhibits, be furnished as part of the record as part of the BOFPC's

answer. Also to be filed is the entire pre-hearing record, including, but not limited to, all motions, responses and orders.

## COUNT VI

### Indemnification

113.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

114.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

115.    The individually named Defendants are or were employees or agents of the Village of Crestwood, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiffs request that judgment be entered against all of the Defendants, jointly and severally, for compensatory damages in an amount to be determined by a jury, punitive damages against the individually-named Defendants, interest on Plaintiffs' compensatory damages at a rate set by law, reasonable costs and attorneys' fees incurred in bringing this action, an injunction barring any future retaliation against the Plaintiffs, reinstatement, and for such other and further relief as the Court and/or jury deems proper. to suffer severe damages including the loss of reputation, pain and suffering, mental anguish, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

## JURY DEMAND

Plaintiffs, DON PRESTON, JOE CORTESI, ERIC CHMURA, GILBERT HUERAMO, II, and ROBERT HOSELTON, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

DeANO AND SCARRY, LLC.

s/Laura L. Scarry
One of Plaintiffs' Attorneys

Laura L. Scarry ARDC #6231266
DeANO & SCARRY, LLC
53 W. Jackson Blvd.
Suite 1610
Chicago, IL 60604
Tel: (630) 690-2800
Fax: (312) 564-4125
lscarry@deanoscarry.com