# BEFORE THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF CRESTWOOD, ILLINOIS

VILLAGE OF CRESTOOD by )
)
DAVID WEIGAND, Chief of Police, )
)
    Complainant, )
)
    v. ) No. 19-1
)
POLICE OFFICER ROBERT HOSELTON, )
)
    Respondent. )

## FINDINGS AND DECISION

On October 22nd, 2019, Village of Crestwood's Chief of Police, David Weigand ("Complainant Chief Weigand"), filed charges with the Board of Fire and Police Commissioners of the Village of Crestwood ("Board") against Crestwood Police Officer Robert Hoselton ("Respondent"). Subsequently, Complainant filed Amended Charges (hereinafter "Charges") on November 26, 2019.

The Charges filed against Respondent are as follow:

| | |
|---|---|
| Charge 1: | Obstruction of Investigation/False Statements |
| Charge 2: | Use of Force |
| Charge 3: | Failure to Report/Notify Supervisor of Use of Force |
| Charge 4: | Failure to Make Video Recording of Use of Force Incident |
| Charge 5: | Unauthorized Use of LEADS |
| Charge 6: | Single Car Collision |
| Charge 7: | Leaving Work Without Proper Notification/Permission |
| Charge 8: | Violating Direct Order |

The Board, as a result of its hearing on the Charges, finds and determines as follows:

1.     The Respondent was at all times mentioned herein a police officer employed by the Village.

2.     The Charges were filed in writing and a notice stating the time and place where the hearing on the Charges were to be held, together with a copy of the Charges, were

1

duly served personally and on Respondent's attorney, Laura L. Scarry, and served on Respondent. Attorney Scarry filed an appearance on behalf of Respondent on November 25, 2019.

3. The Board has jurisdiction of the subject matter of the Charges and of Respondent.

4. The hearing on the Charges was held before the undersigned members of the Board on March 11, 12 and 13, 2020.

5. Throughout the hearing Respondent appeared in person and was represented by legal counsel of his own selection, Laura L. Scarry, of the law firm of DeAno and Scarry, LLC.

6. Throughout the hearing, Chief Weigand, appeared in person and was represented by legal counsel, Jeffrey S. Taylor, of the law firm of Spesia and Taylor.

7. All witnesses were sworn, testified under oath, and were subject to cross examination.

8. A report of all proceedings was transcribed by Maureen K. Nagle, C.S.R. 084-002863 and Mari Beth Kawulia, C.S.R. 084-002873.

9. Commission Exhibits 1-6, inclusive were all offered and admitted into evidence without objection.

10. Complainant's Exhibits 1-15, 18-24 and 27-29 were all offered and admitted into evidence without objection. Complainant's Exhibits 16, 25 and 26 were offered into evidence, Respondent objected to the admission of these exhibits and the objection was sustained. These exhibits were denied admission into evidence. Complainant did not offer Exhibit 17 into evidence.

11. Respondent's Exhibits 1-13 were offered and admitted into evidence without objection.

12. A full and complete set of exhibits admitted is included in the Record of Proceedings.

13. Charges 1 and 5 concern alleged misconduct as it relates to Respondent's use of the LEADS (Law Enforcement Agencies Data System) system on May 1, 2018.

14. Charges 2, 3 and 4 concern Respondent's use of force incident involving the cell extraction of a prisoner on April 7, 2018.

15. The remaining Charges concern three (3) separate incidents:

    A. Charge 6 involves a single car collision involving Respondent;
    B. Charge 7 involves Respondent leaving work without proper notification or permission.
    C. Charge 8 alleges violation of a direct order by Respondent.

16. It is the responsibility of all Crestwood Police Department officers to know the policies, general orders and rules and regulations of the Village of Crestwood. (Tr.

2

468-492). The acknowledgement logs show that Respondent reviewed all relevant policies as it relates to the charges and acknowledged that Respondent understood said policies. (TR. 468-492, CP Exs. 1 & 2).

### LEADS Incident/Investigation Charges 1 & 5

17. Charges 1 and 5 are addressed jointly as they involve the unauthorized use of LEADS and the subsequent investigation.

18. The LEADS computer data system is governed and monitored by the Illinois State Police. Law enforcement officers must be certified by the Illinois State Police to have access to LEADS. (TR. 395-397). Crestwood Police Department polices and LEADS policies prohibit the usage of LEADS for a non-law enforcement purpose. (TR. 60-62, 75-76, 103-104, 396-406, Complainant's (hereinafter "CP") Ex. 6 & Ex. 21).

19. The Illinois State Police issue monthly reports regarding police officers' access and activity using the LEADS system. (TR. 402). The Illinois State Police issued a LEADS report that showed that an inquiry was made on the criminal history of Crestwood Police Officer Robert Hoselton (Respondent) on May 1, 2018, utilizing Crestwood police officer James Van Witzenburg's squad car computer. (TR 103-104, 402-404, CP Ex. 22).

20. Chief Weigand requested Commander Wyman (formerly Master Sergeant Wyman) look into this matter since it may have constituted a violation of Department policies and LEADS policies. (TR. 398, 493, 563, 569).

21. Commander Wyman spoke to Officer Van Witzenburg on July 10, 2018, about the usage of his computer to access the LEADS system database and run Respondent's criminal history on May 1, 2018. (TR. 494).

22. Officer Van Witzenburg informed Respondent that Commander Wyman was inquiring about Respondent's criminal history being run on Officer Van Witzenburg's computer. (TR. 495-498, 542).

23. On July 11, 2018, Respondent went to the Crestwood Police Department to speak to Commander Wyman about the LEADS usage when Respondent's criminal history was run. (TR. 62-63, 495-497). Commander Wyman memorialized this conversation with Respondent in a memo he wrote on July 12, 2018. (TR. 495-497, CP Ex. 27).

24. Commander Wyman noted in his memo and testified to the following:

"Hoselton advised me that he was the one that ran his own name and background using Van Witzenburg's computer and he related that he came forward to tell me because Van Witzenburg didn't know he used his computer and he didn't want Van Witzenburg to get into any trouble for something he didn't have any part of." (TR 496, CP Ex. 27).

3

25. Respondent corroborated the above conversation during his testimony at the hearing:

   Mr. Taylor: Q. Isn't it true that you indicated to Master Sergeant Wyman on July 11th that you ran your own name and background using Van Witzenburg's computer?

   Ofc. Hoselton: A. Yes (TR. 809).

26. Respondent then spoke to Chief Weigand on July 30, 2018, at the Crestwood Police Department. Respondent entered the Chief's office and the Chief was seated at his desk. Chief Weigand memorialized this conversation in a memo dated July 30, 2018 and testified regarding that conversation. (TR. 571-572, CP Ex. 28). Respondent told Chief Weigand:

   "...he (Officer Hoselton) said hey, I fucked up, I ran a criminal history on myself, I hope I don't get fired." (TR.571-572, CP Ex. 28).

   Chief Weigand understood Respondent to mean that he (Respondent) literally utilized Officer Van Witzenburg's computer to run a criminal history on himself. (TR. 572).

27. Respondent provided a different and contradictory statement during his interrogation on March 26, 2019:

   [Det. Soderlund]: Q. Do you know how your name got—how a criminal history was run under your name on a computer that was logged in by Jim Van Witzenburg?

   [Respondent]: A. I do—If I can explain.

   [Det. Soderlund]: Q. Please do.

   [Respondent]: A. I have no idea what time it was. We were parked car to car.... And we were just talking and I asked him I said hey would you mind running my CQH real quick. And I said if somebody says something I said I'll take the hit for it—I'll take the blame for it and he said it was okay. (TR.430-433, CP Ex. 12, p. 0034-0035).

28. Respondent admits in his testimony before the Board that he knew that asking Officer Van Witzenburg to run his (Respondent's) personal information through LEADS was prohibited by LEADS policy, Crestwood Police Department policy and was wrong, however, he still followed through and did so. (TR. 61-62, 811, CP Ex. 12).

29. At a minimum, Respondent admits that he told two (2) different versions of what happened regarding the LEADS incident. Respondent told Commander Wyman that Respondent used Officer Van Witzenburg's computer to run his own criminal history. (TR.495-497, 809, CP Ex. 27). This version is the same interpretation Chief Weigand had from his conversation with Respondent. (TR. 572, CP Ex. 28).

4

30. Respondent provided a different version of events during his interrogation. Respondent then stated that he asked Officer Van Witzenburg to run Respondent's criminal history and gave Officer Van Witzenburg his date of birth and Officer Van Witzenburg physically ran Respondent's criminal history on his own computer. (TR. 61-62,76-79,432-434,776-777,811,CP Ex. 12 p. 0034-0035). As noted in Respondent's testimony:

| | |
|---|---|
| Mr. Taylor: | Q. You knew LEADS prohibited an officer such as yourself from running personal information? |
| Officer Hoselton: | A. Via email from Gary Wyman, yes. |
| Mr. Taylor: | Q. You knew that prior to May 1st of 2018, correct? |
| Officer Hoselton: | A. Yes. |
| Mr. Taylor: | Q. You knew it would be a violation of LEADS policy and protocol to do that, correct? |
| Officer Hoselton: | A. Correct. |
| Mr. Taylor: | Q. Yet you asked Officer Van Witzenburg, another officer with the Crestwood Police Department, to run your personal information on LEADS, correct? |
| Officer Hoselton: | A. I did. |
| Mr. Taylor: | Q. And did he run it for you on LEADS? |
| Officer Hoselton: | A. He did. |
| Mr. Taylor: | Q. He did. (TR. 61-62,). |

31. Respondent now implicates Officer Van Witzenburg as having an active role in running Respondent's information through LEADS and minimizes his own involvement.(Id.).

32. Respondent now provides contradictory testimony in that he told Officer Van Witzenburg that if anyone discovers what Officer Van Witzenburg did, Respondent said that he (Respondent) would "…take the hit for it—I'll take the blame for it and he said okay." (TR.61-62,431-434,776-777, CP. Ex.12 p. 0034-0035). Respondent not only solicits another police officer to violate Crestwood Police Department policies and LEADS policies, but he is offering to "cover up" the misconduct by lying and saying that he (Respondent) committed the actual act of accessing LEADS to run his own criminal history. This level of deception is two-fold in that this "cover up" plan would require that Officer Van Witzenburg also lie about any involvement in this incident in order to let Respondent "take the blame" for it.

33. By "taking the blame" for Officer Van Witzenburg's actions, Respondent would have to assert that he (Respondent) committed the physical act of accessing Officer Van Witzenburg's computer and running his own criminal history without the

5

knowledge of Officer Van Witzenburg, which is what Respondent told Commander Wyman and intimated to Chief Weigand.

34. Upon learning from Officer Van Witzenburg on July 10, 2018, that Commander Wyman was investigating the May 1, 2018, LEADS access regarding Respondent's criminal history, Respondent showed up at the Crestwood Police Department the very next day and executed his plan to cover up and take the blame. Respondent went directly to Commander Wyman and intentionally provided false information regarding the incident in order to cover up the true facts and derail the investigation.(TR.495-497,809).

35. Respondent's false statements regarding the LEADS investigation would implicate the Brady rule. The Brady rule requires that if a police department becomes aware that one of its officers lied, the police department must notify the State's Attorney's Office of the officer's lie because it reflects on his credibility as a witness. (TR. 69-70, 107-109, 116-117, 544-545, 577-579).

36. Multiple witnesses testified that an officer's false statements implicate the Brady rule and would severely undermine the credibility of an officer and would be detrimental to the officer's ability to perform the job of a law enforcement officer. (Id.)

37. Chief Weigand noted how Respondent's false statements implicate the Brady rule:

| | |
|---|---|
| Mr. Taylor: | Q. Does Corporal Hoselton's conduct associated with the information he provided with the LEADS incident implicate the Brady rule? |
| Chief Weigand: | A. Absolutely. |
| Mr. Taylor: | Q. How so? |
| Chief Weigand: | A. He's lied, two different versions of the same situation, and he obstructed the investigation, so, yes, it does apply to Brady. |
| Mr. Taylor: | Q. Okay. So, you would be forced to do what? |
| Chief Weigand: | A. To notify the State's Attorney of that. |
| Mr. Taylor: | Q. Would that be detrimental to his position as a Crestwood police officer? |
| Chief Weigand: | A. Yes. |
| Mr. Taylor: | Q. Because that would affect his ability to testify and be involved in prosecutions? |
| Chief Weigand: | A. Absolutely. (TR. 577-579). |

38. The most fundamental requirement to serve as a police officer is to be honest and tell the truth. Respondent's several layers of lies and deception would implicate the Brady rule and require that Respondent be reported to the State's Attorney's

6

Office. This would call Respondent's credibility into question and jeopardize any case he ever participated in. This would severely impair and be detrimental to Respondent's ability to perform the job of a Village of Crestwood police officer. (TR. 68-69, 108-109, 116-117, 544-545, 577-579).

39. Respondent understands the implication of the Brady rule:

    Mr. Taylor:     Q. What is the Brady rule?

    Officer Hoselton:     A. You can't lie, you are barred from court.

    Mr. Taylor:     Q. What's the implication of that: If you lie, you are barred from court?

    Officer Hoselton:     A. Correct.

    Mr. Taylor:     Q. Would you agree with me that, if you are barred from court, your ability to function as an officer for the Village of Crestwood is severely, if not entirely, compromised?

    Officer Hoselton:     A. I would agree.

    Mr. Taylor:     Q. It's detrimental to your position, true?

    Officer Hoselton:     A. Yes. (TR. 69).

40. Officer Hoselton acknowledges the level of discipline for an officer who was found to have lied:

    Mr. Taylor:     Q. You would expect somebody that lied and misrepresented something, they would have a basis to terminate him, your own belief; isn't that true?

    Officer Hoselton:     A. Including administration, yes. (TR. 70).

41. The Board finds the allegations against Respondent in Charge 1: Obstruction of Investigation/False Statements and Charge 5: Unauthorized Use of LEADS have been clearly proven. The Board further finds that Respondent violated the following policies.

    --Policy 321     Conduct ( in effect 6-28-17 to 11-12-18)
    --Policy 321     Standards of Conduct (effective 11-12-18)
    --Policy 322     Information Technology Use Policy
    --General Order 07-13     Rules of Conduct

## USE OF FORCE INCIDENT (Charges 2, 3, & 4)

42. Charges 2, 3, and 4 will be addressed jointly as they all relate to the cell extraction of a prisoner on April 7, 2018. The Charges are as follows:

   Charge 2:   Use of Force
   Charge 3:   Failure to Report/Notify Supervisor of the Use of Force
   Charge 4:   Failure to Make Video Recording of Use of Force Incident

### Use of Force Charge 2

43. On April 7, 2018, a prisoner who had been arrested for Driving Under the Influence of Alcohol was secured in a cell at the Crestwood Police Department.(TR. 47-49,317-318).

44. The prisoner refused to comply with officers' requests to remove him from the cell in order to process him, i.e. fingerprints and photograph. The prisoner was still intoxicated and was belligerent, irate and non-compliant. (TR. 47-56, 190-195, 317-319, 582, CP. Ex. 12 p. 0035-0045).

45. Respondent was the supervisor on the shift at this time and subordinate officers informed him of the prisoner's refusal to be processed. (TR 48, 57,317,CP. Ex. 12 p. 0035-0045).

46. Respondent made the decision to remove the prisoner from the cell and initiated physical contact with the prisoner by grabbing the prisoner and pulling him to his feet. (TR. 48-51, 100-101, 159-160, 189-190, 325-328, 330-332, 582, 594-595,CP. Ex. 12 p. 0035-0045).

47. A physical altercation took place between Respondent and the prisoner and other assisting officers after the prisoner was extracted from his cell. (TR. 50-51, 190-195, CP. Ex. 12 p. 0035-0045). The prisoner was returned to his cell without having been processed. (TR. 50-52, 190-195).

48. The prisoner complained of pain and an ambulance was requested. (TR. 51-53, 560). Respondent took photographs of the injuries to the prisoner's head. (TR 50-52, 210, CP. Ex. 12 p. 0045, CP. Ex. 18). Respondent noted in an e-mail to Deputy Chief Alexander that Respondent was "…holding Shepard's (prisoner) head down on the ground to limit the movement of the rest of the prisoner's body." (CP Ex.15). Respondent performed this tactic on the prisoner on two separate occasions during the altercation. (CP Ex.15).

49. Respondent testified at the hearing that the prisoner posed no risk to himself, no risk to officers and no threat of escape. In fact, Respondent testified that the prisoner was actually sleeping prior to the cell extraction. (TR. 49-50).

8

50. Respondent testified that he (Respondent) decided to process the prisoner because he didn't want the next shift to have to dedicate someone to keep an eye on the prisoner. (TR. 746-749). Respondent offered the following reason as another basis for his decision to extract the prisoner from his cell: " Yeah, absolutely. Who wants a drunk person laying in their cell? It's a liability." (748-749).

51. There was absolutely no need for Respondent to initiate the cell extraction on April 7, 2018. The prisoner was not a threat to himself or anyone else. The prisoner was intoxicated, combative and specifically told the officers he was not going to be taken out of the cell to be processed. As noted by Chief Weigand, "Time is on our side.". (TR 582). As noted by Respondent, the prisoner had been in custody for only three (3) hours. (TR. 49-50).

52. Numerous witnesses testified that Respondent's decisions and conduct associated with the cell extraction were unwarranted, inappropriate and violated Crestwood Police Department policies. (TR. 48-51, 100-101, 159-160, 189-190, 325-328, 330-332, 582, 594-595).

53. The totality of the circumstances known to Respondent at the time of the cell extraction do not justify the decisions and actions taken by Respondent to forcefully extract the prisoner and try to process him.(TR. 162,188-196,581-583). There is no reason to forcefully remove someone from a cell under these circumstances. (TR. 162, 582).

54. Respondent's conduct and decision to perform the cell extraction of the prisoner violates the following Crestwood Police Department policies:

    --Policy 300            Use of Force
    --Policy 321            Conduct (in effect 6-28-17 to 11-12-18)
    --General Order 07-13   Rules of Conduct

### Failure to Report/Notify Supervisor of Use of Force   Charge 3

55. **Reporting the Use of Force:** Crestwood Police Department policy requires any use of force by a member of the department "shall be documented promptly, completely and accurately in a Use of Force/Show of Force/Firearm Discharge Report". (TR. 54-56,166-173, 552-553, CP Ex.3 and CP Ex. 20).

    A. The evidence is undisputed that Respondent was involved in a use of force incident with a prisoner on April 7, 2018. It is further undisputed that the prisoner sustained injuries and an ambulance was called to administer medical aid. (TR. 50-52,184-188,560).

9

    B. It is further undisputed that a Use of Force Report was never submitted by Respondent. (TR.56,100,332-333,547-548,566). Respondent was the supervisor on the shift but never submitted a Use of Force Report as required by Crestwood Police Department policy. (TR. 56). After determining that Respondent had not submitted a Use of Force Report regarding the cell extraction, Commander Wyman requested that Respondent submit a Use of Force Report. (TR. 548-549). Respondent admitted in his interrogation that a Use of Force report should have been done. (CP Ex. 12 p.0046-0047). Nevertheless, Respondent never submitted the required Use of Force Report as ordered. (TR 547-553).

    C. Respondent, as the supervisor of the shift, did not notify the on-call Master Sergeant regarding the Use of Force incident as required by the Crestwood Police Department Use of Force policy. (TR. 56-57,183, 334, CP Ex.3). In response as to why Respondent never submitted a Use of Force Report, Respondent stated as follows:

    [Officer Hoselton]    A. Like I said before, I forgot to do it, and I just have never been told to do it, and, like I testified, he said he (Cmdr.. Wyman) told me to do it. I honestly don't recall him telling me to do it, and, you know, if this case was as serious as they thought it was or that it was, you'd think they would tell me maybe a second time or send me an email or something.(TR. 763).

It should be noted that Respondent testified he was a supervisor and also responsible for approving hundreds of reports of other officers to determine if they had covered all the bases in their reports. (TR.757-759). Respondent's above answer demonstrates, at the very least, a complete disregard for the Use of Force policies of the Village of Crestwood and an inattention to duty. It is unsettling to hear that Respondent, who approves reports for other officers in a supervisory role, would have expected to be reminded a second time to submit a required Use of Force Report in this case. Respondent's response above serves as greater evidence of Respondent's significant shortcomings in his ability to perform the duties of a Crestwood Police Officer.

56. The Board finds the allegations against Respondent in Charge 3: Failure to Report/Notify Supervisor of Use of Force have been clearly proven. The Board finds that Respondent violated the following policies:

    --Policy 300    Use of Force
    --Policy 323    Report Preparation
    --General Order 07-13    Rules of Conduct

### Failure to Make Video Recording of Use of Force Incident    Charge 4

57. Respondent failed to use the handheld video recorder during the cell extraction as mandated by Crestwood Police Department Policy. (TR. 58, 336, 545-546, 582-584, CP Ex. 8). Respondent was the supervisor on the shift and was responsible to ensure that all proper policies and procedures were followed. (TR. 48,545-546,582-584). It is undisputed that no handheld video recorder was used to record the cell extraction. Respondent admitted in his interrogation that he should have used the hand held video recorder.(CP Ex. 12 p. 0042).The Board finds that Respondent has violated Crestwood Police Department policy as it relates to video recording the cell extraction. The following policies were violated by Respondent:

    --Policy 424          Video Recording/Security and Control
    --General Order 16-02    Video Recording/Security and Control

### Car Accident    Charge 6

58. Respondent was involved in a single car accident on April 17, 2018, for which he admitted was avoidable and was his fault. (TR. 70-71, 109-110, 337-339, 512-514, 784-786, CP Ex.14).

59. Respondent violated:

    -- Policy 321           Conduct (in effect 6-28-17 to 11-12-18)
    -- General Order 07-13    Rules of Conduct

### Leaving Work without Proper Notification/Permission    Charge 7

60. Respondent was working in a light duty position on February 18,2019 and assigned to perform computer work at a desk. Respondent was scheduled to work until 6:00 a.m. on February 19, 2019. (TR. 113-114, 269, 283-284, 340-341, 588-590).

61. Crestwood Police Department policies require that an employee is required to notify their supervisor prior to leaving work early. (TR. 113-114, 340-341, 588-590, CP Ex. 5). Respondent left work six (6) hours before his shift ended due to an alleged illness. (TR. 787, Resp. Ex. 5). Since Respondent was on light duty, he was assigned to the administration staff and his reporting supervisor was the on-call Master Sergeant. (TR 113-114, 269-274, 283-285, 340-341, 588-590). Respondent testified that he spoke to Sergeant Contant about leaving work early and Sergeant Contant told Respondent he could leave. (TR. 786-791). Sergeant Contant was assigned to the Patrol Division and any alleged permission he gave would not constitute proper authorization. (Id). It is undisputed that Respondent did

11

not contact his direct supervisor regarding leaving work early. (TR. 113-114, 283-284, 340-341, 588-590, 786-787).

62. The Board finds Respondent did not notify his supervisor regarding leaving work six (6) hours early and is in violation of:

--Policy 321            Standards of Conduct (effective 11-12-18)

-- General Order 07-13  Rules of Conduct

### Violating Direct Order  Charge 8

63. Chief Weigand gave a direct order to Commander Spencer to relay to Respondent that Respondent was not to wear a uniform while assigned to light duty. (TR 282, 339-340, 590-593, 641-642). Commander Spencer testified he relayed Chief Weigand's direct order to Respondent that Respondent was not to wear a uniform while on light duty, prior to February 19, 2019. (TR. 282, 339-340, 381, 388). It is undisputed that Respondent was in full uniform on February 19, 2019, when Chief Weigand observed him at the Bridgeview courthouse. (TR. 73-74, 590-593).

64. Respondent denies Commander Spencer ever relayed Chief Weigand's direct order that Respondent not wear a uniform while assigned to light duty. (TR 73-74)

65. Commander Spencer's testimony is credible on this issue. Respondent violated a direct order from Chief Weigand by wearing his uniform while assigned to light duty.

66. The fact that Commander Spencer was a part-time officer and Respondent was a full-time officer has no effect on the validity and enforceability of Chief Weigand's direct order. A direct order from the Chief of Police is valid whether it was relayed by a part-time officer or full-time officer. (TR 586-587) The direct order is coming from Chief Weigand and failure to abide by the order is a violation of the direct order. Accordingly, Respondent violated:

-- Policy 321            Standards of Conduct (effective 11-12-18)
-- General Order 07-13   Rules of Conduct

### Decision

67. "Cause" for discharge is some substantial shortcoming which renders continuance in employment in some way detrimental to the discipline and efficiency of the public service and something which the law and sound public opinion recognize as cause for the officer to no longer occupy his position. The right to determine what constitutes cause is in the Board. (Rules and Regulations of the Board of Fire and Police Commissioners Village of Crestwood, Ch. VI, Section 1d)

12

68. The evidence admitted and received in this hearing, as noted above, prove that Respondent knowingly violated department policies and LEADS policies when he persuaded Officer Van Witzenburg to run Respondent's criminal history. Respondent admitted that such access and usage of LEADS for non-law enforcement purposes violated Crestwood Police Department policies and LEADS policies.

69. The evidence further demonstrates that Respondent solicited a fellow officer to violate policies and induced that officer's cooperation by agreeing to provide false information if the improper conduct was discovered. This cover up would require not only Respondent to lie, but also Officer Van Witzenburg to lie.

70. Respondent followed through on his plan to cover up the true facts when he made false and misleading statements to Commander Wyman and Chief Weigand indicating he acted alone and without Officer Van Witzenburg's knowledge using Officer Van Witzenburg's computer to access LEADS.

71. The false statements made by Respondent were designed and served to intentionally obstruct and interfere with the investigation into the improper usage of LEADS.

72. The fact that Respondent lied in the course of this investigation would implicate the Brady rule and require the Crestwood Police Department to notify the State's Attorney's Office on every case Respondent worked on, that Respondent's credibility is at issue. This factor alone severely and negatively affects Respondent's ability to perform the job of a Crestwood police officer. Respondent agreed in his testimony that the fact that an officer lied would be grounds for termination. (TR. 70). And the fact that Respondent lied is undisputed.

73. Respondent's unauthorized use of the LEADS system jeopardizes the entire Crestwood Police Department's access to this necessary and vital resource. Illinois State statute provides that the Illinois State Police may suspend all or any portion of LEADS service without prior notification as a result of an agency's non-compliance with laws, rules, regulations, or procedures. (Title 20, Ch. II, Part 1240.110).

74. Respondent's knowing and intentional conduct regarding the unauthorized use of LEADS, the enticement of a fellow officer to violate Department policies and LEADS policies, the plan to "cover up" the wrongful actions of both officers and the false and misleading statements by Respondent made with an intent to obstruct an investigation, the implication of the Brady rule due to Respondent's dishonesty and the potential threat of jeopardizing Crestwood Police Department's access to the LEADS system, lead the Board to conclude that any one of the above actions, standing alone, would constitute a substantial shortcoming which would render Respondent's continuance in employment detrimental to the Crestwood Police Department and the public at large and serves as a basis for cause for termination of Respondent's employment as a Crestwood police officer. Each one of the

13

violations noted above, in and of themselves, serve as cause for termination of Respondent's employment with the Village of Crestwood.

75. In regards to the charges related to the cell extraction: Charge 2 Use of Force, Charge 3 Failure to Report/Notify Supervisor of Use of Force and Charge 4 Failure to Make Video Recording of Use of Force Incident: the Board finds Respondent guilty of all of these charges.

76. Respondent's shortcomings as a Crestwood Police Officer as it relates to the cell extraction are borne out by the evidence. Numerous guidelines established by Crestwood Police Department policies were completely disregarded by Respondent. The decision to initiate the cell extraction was condemned by Deputy Chief Alexander, Commander Spencer, Commander Wyman and Chief Weigand. (TR. 99-100,324-328,331-332,512-513,565-566,581-582).

77. It is uncontested that Respondent failed to notify the on-call supervisor of the Use of Force incident after it occurred. Respondent further failed to fill out and submit a Use of Force Report as mandated by Crestwood Police Department policies, even after Commander Wyman requested Respondent to do so.

78. It is also undisputed that Respondent failed to video tape the cell extraction as was required by Crestwood Police Department policies. As supervisor of the shift, Respondent was responsible for adhering to the policy.

79. The misconduct and disregard of policies and procedures demonstrated by the Respondent are significant and repetitive as they relate to the cell extraction. Such behavior establishes that Respondent cannot efficiently and competently perform the role of a Crestwood Police Officer. The evidence related to the cell extraction clearly demonstrates that Respondent has substantial performance shortcomings which render Respondent's continuance in employment detrimental to the Crestwood Police Department. The Board finds Respondent should be terminated from his position as police officer for the Village of Crestwood. The Board further finds that the Charges related to the cell extraction, standing alone, are sufficient cause for termination of Respondent's employment as a Village of Crestwood Police Officer.

80. Charge 6 regarding a single car accident, Charge 7 regarding Leaving Work Without Proper Notification or Permission and Charge 8 Violating a Direct Order and the related policies, have been proven by Chief Weigand.

81. Respondent's violations of these policies related to Charges 6,7 and 8 evidence a consistent pattern of Respondent's failure and/or inability to follow Crestwood Police Department policies. The repetition of policy violations further support the finding that Respondent demonstrates that he has substantial performance

14

shortcomings which render his continuance in employment as a Crestwood Police Officer detrimental to the discipline and efficiency of the public service and constitutes cause for Respondent's termination from employment as a Village of Crestwood Police Officer.

82. Respondent presented eight (8) Crestwood Police Department commendations ("Certificates of Excellence"), letters of appreciation from the Midlothian Police Department and Crestwood Fire Department and an email from a citizen complimenting Respondent's actions. (Resp.'s Ex. 12). The Board of Fire and Police Commissioners find that this mitigating evidence does not impact the decision to terminate Respondent for cause.

83. It is further noted that the time period over which the charges against Respondent occurred were from April 7, 2018 to February 19, 2019. During that time frame Respondent was off of work for at least the complete months of July, August, November and December of 2018. (TR. 285-286,561-563). In less than eight (8) months, Respondent accumulated all the charges for which he has been found guilty. The significance is that Respondent managed to commit all of the charged violations in a very abbreviated period of time. The severity and frequency of policy violations committed by Respondent further serve to demonstrate beyond a preponderance of the evidence that Respondent has substantial shortcomings which render his continued employment detrimental to the Village of Crestwood Police Department and serve as cause for termination of employment.

[SIGNATURES ON NEXT PAGE]

15

In view of the above findings, the Board of Fire and Police Commissioners of the Village of Crestwood, hereby orders that Respondent, Robert Hoselton, be and he is hereby discharged and removed from his position as a police officer and as a member of the Police Department of the Village of Crestwood, Illinois and from the service of said municipality as of the 19th day of June, 2020.

Dated at Crestwood, Illinois this 19th day of June 2020.

_____
Frank Caldario, Chairman

_____
Joseph Zangara, Secretary

_____
James Fowler, Commissioner

16