**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DON PRESTON *et al*,

Plaintiffs,

v.

DAVID WIEGAND *et al.*,

Defendants.

Case No. 20-cv-4272

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiffs Don Preston, Joseph Cortesi, Eric Chmura, Gilbert Hueramo, II, and Robert Hoselton bring this civil rights action against Defendants. Plaintiffs were police officers employed by the Village of Crestwood who allege they were terminated for their efforts to unionize. The defendants move to sever and to dismiss the Complaint. For the reasons stated herein, the motion to sever or dismiss [48] is denied and the motions to dismiss [46, 49] are granted in part and denied in part.

### I. Background

The following factual allegations are taken from the Amended Complaint (Dkt. 43 ("Am. Compl.")) and are accepted as true for the purposes of the motions to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Plaintiffs were all employed by the Village of Crestwood Police Department. Am. Compl., ¶¶ 4-8. They were terminated in Fall 2019, or in Hosetlon's case, June 2020. *Id*. Preston, Cortesi, Chmura, and Hueramo all were part-time officers. *Id.* at ¶¶ 4-7. Hoselton started as a part-time officer but in 2013 became a full-time officer and was

1

later promoted to Corporal. *Id.* at ¶ 8. Plaintiffs named as defendants the Village of Crestwood, Chief of Police for the Village of Crestwood David Weigand, Deputy Chief and Director of Operations for the Village of Crestwood Police Department David Alexander, Commanders for the Village Police Department Chris Spencer and Richard Wyman, Detective Sergeant for the Village Police Department Michael Coutre, Village of Crestwood Mayor Louis Presta, Village of Crestwood Board of Fire and Police Commissioners ("BOFPC"), and Board Commissioners Rob Lyons, Frank Caldario, Joseph Zangara, and James Fowler. *Id.* at ¶¶ 9-20. Alexander, Spencer, and Wyman were employees in Weigand's administrative staff who supervised and directed full-time and part-time police officers. *Id.* at ¶ 22.

Plaintiffs allege that during Weigand's tenure as Chief of Police, he showed favoritism by rewarding and/or promoting Village police officers and members of his administrative staff who were loyal to him and did his bidding. *Id.* at ¶ 23. Many of these individuals engaged in unethical and sometimes criminal activity but he and the Village covered up for and/or turned a blind eye to those activities. *Id.* Plaintiffs spoke out about Chief Weigand and his administrative staff's inconsistent, arbitrary and unlawful treatment of officers, the Village and police administration's turning a blind eye to the unethical and unlawful behavior by Weigand's favored officers, and other matters of public concern. *Id.* at ¶ 24.

On June 27, 2019, Preston, Hueramo, and Hoselton met with an officer of Illinois Council of Police ("ICOPS") to discuss the unionization process for the Village's full- and part-time police officers. *Id.* at ¶ 26. With enough authorization cards for the

part-time officers only, on July 8, 2019, ICOPS filed a majority interest representation/certification petition on behalf of the part-time officers with the Illinois Labor Relations Board ("Labor Board"). *Id.* at ¶¶ 27-28. The Labor Board certified ICOPS as the exclusive bargaining unit for the Village's part-time police officers on or about August 1, 2019. *Id.* at ¶ 30. Defendants thereafter discussed ways to "bust" the union of part-time officers and retaliate against any Village police officer who supported the unionization of part-time and full-time police officers, and engaged in a campaign of intimidation, threats and coercion against Plaintiffs. *Id.* at ¶¶ 31-32. Upon learning that Hoselton was discussing unionization of full-time officers, Weigand twice demanded Hoselton's resignation, and threatened Hoselton that if he did not resign, Weigand would bring disciplinary charges against him before the BOFPC. *Id.* at ¶¶ 36-37. When Hoselton refused to resign, Weigand ordered Alexander, with the assistance of Wyman and Spencer, to fabricate disciplinary charges against Hoselton. *Id.* at ¶ 38.

On September 21, 2019, Defendants held a meeting during which officers were coerced, intimidated and threatened to sign an anti-union petition or risk losing their jobs. *Id.* at ¶¶ 42-44. Preston, Cortesi, Chmura and Hueramo did not attend the meeting or sign the petition. *Id.* at ¶ 44. These plaintiffs were thereafter terminated due to their pro-union stance, including their union authorization signature, and refusal to sign anti-union paperwork. *Id.* at ¶¶ 47, 49, 51, 52. By contrast, Alexander, Spencer, and Wyman were hired and/or promoted to fulltime positions as a reward for their "union busting activities." *Id.* at ¶ 62. On about October 22, 2019, after

Hoselton refused to resign under pressure from Weigand, Weigand brought fabricated disciplinary charges against him before the BOFPC. *Id.* at ¶ 50.

Between October 2019 and Hoselton's March 2020 BOFPC disciplinary hearing, members of the BOFPC conspired and agreed with Weigand and now former Mayor Presta to terminate Hoselton's employment despite the overwhelming evidence in favor of maintaining Hoselton's employment. *Id.* at ¶ 65. Defendants Caldario, Zangara and Fowler terminated Hoselton's employment on June 19, 2020. *Id.*

## II.    Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered

adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)). Rule 12(b)(1) permits a party to move for dismissal based on lack of subject-matter jurisdiction. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

## III.    Analysis

Plaintiffs bring federal claims under 42 U.S.C. § 1983—First Amendment retaliation based on speech (Count I) and union activity (Count II), deprivation of procedural due process (Count III (brought by Hoselton only)), and conspiracy to retaliate (Count IV). They also bring an Illinois state law claim for indemnification (Count VII). Hoselton only also brings claims for retaliatory discharge (Count V) and for administrative review of the BOFPC Decision under the Illinois Administrative Review Law, 735 Ill. Comp. Stat. 5/3-102 (Count VI, "ARL claim").

### A. Village Defendants' Motion to Sever or Dismiss

The Village Defendants seek to sever Hoselton as a party from this case under Federal Rule of Civil Procedure 21 or in the alternative to dismiss Count VI without prejudice and stay the remaining claims pending administrative review. (Dkt. 48).

### 1. Motion to Sever

Rule 20(a) allows for permissive joinder "when two requirements are met. First, the cases to be joined must contain a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences. Second, there must be a question of law or fact common to all the plaintiffs."[1] *McDowell v. Morgan Stanley & Co.*, 645 F.Supp.2d 690, 694 (N.D. Ill. 2009) (internal citations and quotations omitted). If "the Court finds that joinder is improper, Rule 21 comes into effect." *Id.* Under Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. Pro. 21. "It is within the district court's broad discretion whether to sever a claim under Rule 21." *Rice v. Sunrise Express*, Inc., 209 F.3d 1008, 1016 (7th Cir. 2000). A court may sever claims, "creating two separate proceedings, so long as the two claims are 'discrete and separate.'" *Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (citation omitted). "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of

---

[1] Defendants concede that Plaintiffs assert common legal theories but suggest that there are not common questions of law or fact (Dkt. 48 at 4). Defendants do not develop this argument and the Court will not do so for them. *See Kossman v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1038 (7th Cir. 2000) (court "has no duty to research and construct legal arguments available to a party") (citations and quotations omitted).

claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Village Defendants argue that Hoselton's claims do not arise out of the same transaction or occurrence as the part-time Plaintiffs' claims. First, they contend that different procedures led to the adverse employment actions (Hoselton, as a full-time officer, had a full hearing whereas part-time officers, who can be terminated at any time, did not). The Village Defendants maintain that part-time Plaintiffs' claims are based on their union activities and speaking out about matters of public concern whereas Hoselton did not present, and BOFPC did not consider, evidence about his union activity or speaking out about matters of public concern. Further, they argue, review of the ARL claim will likely mean Hoselton's and the part-time Plaintiffs' claims will be on different trajectories. Second, Village Defendants contend that Hoselton and part-time Plaintiffs allege different types of retaliation. Third, severance is needed, they say, to prevent "inappropriate commingling of claims" and protracted discovery.

To determine whether the same transaction or occurrence standard is met, "a case-by-case approach is generally pursued because no hard and fast rules have been established." *White v. Coventry Health Care, Inc.*, 2018 WL 1469025, at *2 (N.D. Ill. Mar. 26, 2018) (cleaned up). First, it is true that Hoselton had a hearing before the BOFPC and the part-time Plaintiffs did not. But the complaint plausibly alleges that all Plaintiffs were responding to favoritism and the unlawful treatment of officers, and that the reason they were retaliated against and their employment terminated

7

was their efforts to unionize and speak out on matters of public concern. Am. Compl. ¶¶ 23-24, 36-38, 50, 53, 65, 68-70. Defendants focus on Hoselton's claimed retaliation based on his filing of a worker's compensation lawsuit in July 2018. *See id.* ¶ 107. However the complaint alleges that this event set off *a series of retaliatory actions* by Defendants, and that after Defendants learned of Hoselton's involvement with, and support of, unionization, Weigand filed disciplinary charges against Hoselton before the BOFPC on October 22, 2019. *Id.* at ¶ 114. The reasonable inference is that the retaliation against Hoselton began in 2018 when he filed his worker's compensation lawsuit, but his unionization efforts were the catalyst for disciplinary charges being filed against him.[2] Four of the Plaintiffs were terminated within a month of each other, in Fall 2019. Am. Compl. ¶¶ 4-7. Around this same time, Hoselton was being pressured to resign, and when he did not, Weigand filed disciplinary charges against him, within days of other Plaintiffs being terminated. *Id.* ¶¶ 49-52. Defendants' attempts to parse the type of retaliation and timeline in this case are not a basis to sever.

All of Plaintiffs' claims arise out of the same transaction or occurrence or series of transactions or occurrences—a campaign of retaliation led by Chief Weigand in response to Plaintiffs' efforts to unionize and call attention to what they believed was a culture of favoritism and wrongful treatment of certain officers. Defendants rely on *Berry v. Illinois Dep't of Hum. Servs.*, 2001 WL 111035 (N.D. Ill. Feb. 2, 2001) but

---

[2] Moreover, at this pleading stage, Hoselton is permitted to put forth alternative theories of retaliation. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *Wightman v. Wauconda Twp. Highway Dep't*, 2021 WL 534668, at *4 (N.D. Ill. Feb. 12, 2021).

that case is distinguishable. In *Berry*, 33 plaintiffs filed suit; they were current or former employees at six different facilities of the Illinois Department of Human Services. *Id*. at *1. Plaintiffs *agreed* severance was appropriate but proposed six cases whereas defendants advocated for 33 separate cases. *Id*. at *17. The Court found "*no common thread* connecting all 33 plaintiffs." *Id*. (emphasis added). Plaintiffs alleged a variety of different mistreatment, ranging from race discrimination to false arrest to retaliation for union activity, as well as different resulting adverse employment actions. *Id*. By contrast, this case involves *five* plaintiffs and the complaint does *not* allege a range of mistreatment or adverse employment actions. There is a common thread—Plaintiffs all allege they were terminated for their efforts to unionize and speak out against Weigand and his staff.

Finally, Defendants argue that even if the Rule 20(a) standard is satisfied, the Court should still sever Hoselton as a party because of concerns about judicial economy and prejudice. They say "inappropriate commingling of claims" could result in evidence improperly being considered for the ARL claim and cause protracted discovery. Arguments about what evidence can be considered on administrative review can be made when those issues are before the Court (Plaintiffs do not dispute that the Court's review will be limited to the record before the Board). This Court is capable of distinguishing the evidence that was before the Board from evidence produced separately in this case and reviewing the Board's decision when federal claims are also pending, as other courts have done. *See e.g. McRay v. Ross*, 2018 WL 2432164 (N.D. Ill. May 30, 2018); *Bless v. Cook Cty. Sheriff's Off.*, 2020 WL 4437666

(N.D. Ill. Aug. 3, 2020). Defendants' arguments about discovery are also not persuasive as there are case management procedures to handle discovery in cases such as this one. Defendants claim prejudice but do not identify any particular prejudice that they will suffer other than the procedural issues already discussed.

For all of these reasons, and considering that joinder of claims, parties and remedies "is strongly encouraged," *United Mine Workers of America*, 383 U.S. at 724, the motion to sever is denied.

### 2. Rule 12(b)(1) Motion to Dismiss

In the alternative Defendants argue that the Court should decline to exercise supplemental jurisdiction over Count VI and dismiss it without prejudice for resolution in state court. They contend that Hoselton's ARL claim substantially predominates over his federal claims and the procedural issues present exceptional circumstances or compelling reasons for declining jurisdiction.[3]

"If a district court possesses original jurisdiction over one claim, 28 U.S.C. § 1367(a) permits that court to also exercise supplemental jurisdiction over any claim that is 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019). Federal courts may, in their discretion, exercise supplemental jurisdiction over a state claim if the state and federal claims "derive from a common nucleus of operative fact." *Hansen v. Bd. of Trustees of Hamilton Se.*

---

[3] The parties dispute whether Defendants have brought a facial or factual challenge to jurisdiction under Rule 12(b)(1), but even under the harder standard for Plaintiffs, a factual challenge, the Court denies the motion. *See Apex Digital*, 572 F.3d at 444 (discussing the difference between facial and factual attacks on jurisdiction under Rule 12(b)(1)).

*Sch. Corp.*, 551 F.3d 599, 606–07 (7th Cir. 2008). Relevant here, § 1367 "generally confers supplemental jurisdiction over 'all other claims' in the same case or controversy as a federal question, without reference to the nature of review." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 169, 118 S. Ct. 523, 531, 139 L. Ed. 2d 525 (1997). And "nothing in the text of § 1367(a) [] indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative determination." *Id. See also McRay*, 2018 WL 2432164, at *4 (court had supplemental jurisdiction over administrative-review claim); *Coleman v. Sheriff of Cook Cty.*, 2017 WL 4150616, at *2 (N.D. Ill. Sept. 19, 2017) (the purpose of supplemental jurisdiction is to promote "economy in litigation") (citations omitted).

Defendants rely on *Van Dyke v. Illinois Dep't of Child. & Fam. Servs.*, 2014 WL 2134580 (N.D. Ill. May 22, 2014). There the court declined to exercise supplemental jurisdiction over plaintiff's administrative review claim because the court dismissed two federal claims so only one federal claim remained. The court found that the crux of plaintiff's complaint "asks this Court to return K.C. to her home by reviewing and overturning a decision by the DCFS." *Id.* at *8. Thus the state-law claim substantially predominated over the sole remaining federal claim. *Van Dyke* also involved only one plaintiff. Here, by contrast, the case involves multiple plaintiffs and several federal claims (as discussed below, the Court is dismissing the due process claim but the First Amendment and conspiracy claims remain). The Court does not find that the ARL claim substantially predominates over the federal claims. *See Royal Towing, Inc. v. City of Harvey*, 350 F. Supp. 2d 750, 756 (N.D. Ill. 2004) ("Plaintiff's § 1983

claim…does not depend on the outcome of his administrative review claim; nor does that state law claim overwhelm the federal claim.").

The Board Defendants argue that the ARL claim does not constitute the same case or controversy as Plaintiffs' First Amendment claims. (Dkt. 47). However a "loose factual connection between the claims is generally sufficient." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (internal citations omitted). Here the administrative claim has at least a "loose factual connection" to the First Amendment claims—they are all related to the circumstances leading to and reasons for Plaintiff's termination. As Plaintiffs argue, the ARL claim is part of the larger picture of Defendants' retaliatory conduct against them. Accepting Defendants' argument that Hoselton did not raise his pro-union or other First Amendment activity during the Board proceeding does not mean that no factual connection exists between the claims, especially considering that the standard "is not particularly demanding." *Elftmann v. Vill. of Tinley Park*, 191 F. Supp. 3d 874, 882 (N.D. Ill. 2016).

Defendants also rely on *Mucha v. Vill. of Oak Brook*, 2008 WL 4686156 (N.D. Ill. May 29, 2008). There the court found that the remaining federal claim was narrow—it was based on plaintiff being arrested for improperly ordering a criminal background check of someone. Plaintiff's claim for administrative review sought review of a Board decision based only on plaintiff's false statements about using a particular email address. Here, there are multiple remaining federal claims and they are not so narrow. *Mucha* is also not binding on this Court. Further, Defendants' assertion that Hoselton "does not allege that the was terminated as a direct result of

12

exercising his First Amendment rights" (Dkt. 47 at 11) mischaracterizes the complaint. Hoselton alleges for example that: "With the intent to chill the free speech and/or association of Hoselton…for [his] support of the unionization of the Village's police officers, Defendants Caldario, Zangara and Fowler terminated Hoselton's employment on June 19, 2020." Am. Compl. ¶ 65. He also alleges that he, along with other Plaintiffs, were retaliated against for speaking out about the way Weigland and his staff treated officers and condoned unethical behavior, and for their support of unionization. *Id*. ¶¶ 68-70. Therefore the federal and administrative review claims derive from a common nucleus of operative fact.

Finally, Defendants contend that this case presents exceptional circumstances because the administrative and federal claims will involve different issues and proof. The Court does not agree that this is an exceptional circumstance warranting declining to exercise supplemental jurisdiction over the ARL claim. Again, courts have handled cases in such procedural postures before. *See McRay*, 2018 WL 2432164; *Bless*, 2020 WL 4437666. And the Court believes resolving the federal and ARL claim in one forum will promote judicial economy. *See City of Chicago*, 522 U.S. at 172–73 (courts should consider "the principles of economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction); *Hansen*, 551 F.3d at 608 ("The district court has broad discretion in deciding whether to retain supplemental claims.").[4] Accordingly the Court exercises supplemental jurisdiction over the ARL claim.

---

[4] Defendants also argue that the Court should decline to exercise pendent party jurisdiction over the Board. (Dkt. 47 at 13). The Court disagrees. With jurisdiction over the federal claims,

### B. Rule 12(b)(6) Motions to Dismiss

#### 1. Immunity for Board Members

Defendants argue that the Board members are immune from liability. "Absolute immunity is available to members of quasi-judicial adjudicatory bodies when they perform duties that are functionally comparable to those of a judicial officer, regardless of the identity of the actor." *Capra v. Cook Cty. Bd. of Rev.*, 733 F.3d 705, 709 (7th Cir. 2013) (cleaned up). Plaintiffs concede that the individual Board members are entitled to quasi-judicial immunity for the federal claims (Dkt. 54 at 9). Those individuals, Rob Lyons, Frank Caldario, Joseph Zangara, and James Fowler, are dismissed from this case with prejudice.

#### 2. Defendant Coutre

Next Defendants argue that Michael Coutre must be dismissed from Counts I, II and IV. Coutre was Detective Sergeant for the Village of Crestwood Police Department. Am. Compl. ¶ 14. He is alleged to have met with other defendants to discuss ways to "bust" the union of part-time officers and retaliate against officers who supported the unionization of part- and full-time officers. *Id*. ¶ 31. Defendants contend that Hoselton fails to identify anything that Coutre did in retaliation for Hoselton speaking out or participating in union activity or any act he did to otherwise deprive Hoselton of his constitutional rights. "Individual liability under § 1983 []

---

the Court in its discretion exercises supplemental jurisdiction over the sufficiently-related state law administrative claim against the Board. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558, 125 S. Ct. 2611, 2620, 162 L. Ed. 2d 502 (2005) ("Section 1367(a) is a broad grant of supplemental jurisdiction over other claims within the same case or controversy…The last sentence of § 1367(a) makes it clear that the grant of supplemental jurisdiction extends to claims involving joinder or intervention of additional parties.").

requires personal involvement in the alleged constitutional deprivation…An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (cleaned up).

As Defendants point out in their reply brief, Plaintiffs failed to respond to their argument about Coutre, resulting in waiver. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (cleaned up); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (waiver applies "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").[5]

Defendant Michael Coutre is dismissed from this case with prejudice.

### 3. First Amendment retaliation – speech (Count I)

In Count I Plaintiffs allege that Defendants retaliated against them for speaking out. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions…for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). A prima facie case of

---

[5] This is also not the first time Defendant Courte has argued Plaintiffs failed to state a claim. After Plaintiffs filed an amended complaint, Courte's original motion to dismiss was denied without prejudice (*see* Dkt. 45). Coutre's original motion (Dkt. 34), argued that Plaintiffs failed to adequately allege Coutre's involvement in the alleged constitutional violations. Plaintiffs' response in the form of the Amended Complaint has not repaired that deficiency. Therefore the claims against Coutre are dismissed with prejudice.

retaliation in violation of the First Amendment requires that: (1) plaintiff engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor behind the deprivation plaintiff was made to suffer. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

Plaintiffs plausibly allege each of these elements: They spoke out about Weigand's and his administrative staff's wrongful treatment of officers, their turning a blind eye to other officers' unethical and unlawful behavior, and the unionization of the Village's police officers. Am. Compl. ¶¶ 68-70. This speech was constitutionally protected. *Id*. ¶ 69. They suffered a deprivation because they were terminated and their First Amendment activity was a motivating favor behind the terminations. *Id*. ¶¶ 47-53.[6] Given these allegations, the Court disagrees with Defendants' contention that the complaint fails to allege that the speech was protected or was a motivating factor behind the deprivation of their rights. Defendants rely on this Court's decision in *Harris v. City of Chicago*, 2020 WL 4815907 (N.D. Ill. Aug. 18, 2020). In *Harris* the

---

[6] Defendants' characterization of Plaintiffs' First Amendment claim as an "unlawful treatment" claim unrelated to unionization is not convincing. Reading the complaint in the light most favorable to Plaintiffs, the First Amendment speech claim encompasses speaking out about Weigand's administration's treatment of officers, condoning unethical conduct, and officers' efforts to unionize. Defendants' arguments are better fit for a later stage of litigation. *See Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) (plaintiffs' allegations must show their case is plausible but they need not plead legal theories); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (Rule 12(b)(6) does not "permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."). Moreover, to the extent Plaintiffs explain a more cohesive picture of the First Amendment claims in their response brief, that is not grounds for dismissal. *See Ferguson v. Cook Cty., Illinois*, 2021 WL 3115207, at *5 (N.D. Ill. July 22, 2021) ("In opposing a Rule 12(b)(6) motion, a plaintiff is free to elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings.") (cleaned up).

Court explained that "nowhere in his Complaint does [plaintiff] reference *any* particular act by *any* Defendant" and he did not identify "*any* wrongful act of any particular defendant or defendants related to his First Amendment claim." *Id*. at *3 (emphasis added). That is not the case here. Plaintiffs identify particular wrongful acts by particular defendants related to their First Amendment claim. *See* Am. Compl. ¶¶ 23, 31-41, 44, 48.[7] The motion to dismiss Count I is denied.

### 4. Due Process Claim (Count III)

Hoselton brings a Fourteenth Amendment procedural due process claim. He alleges that he was denied his right to a fair hearing before the Board because the hearing procedures were illusory. Am. Compl. ¶ 90. To state a claim for a procedural due process violation, a plaintiff must demonstrate "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Manistee Apts., LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). "At the heart of due process is the right to a fair hearing conducted by an impartial tribunal." *Bakalis v. Golembeski*, 35 F.3d 318, 323 (7th Cir. 1994).

Hoselton argues that he sufficiently pled that he was subject to a sham investigation because the BOFPC decision to terminate his employment had previously been made before the hearing and presentation of witnesses and evidence. However courts have "repeatedly held that the Administrative Review Act provides a remedy for the sort of due process violations alleged here." *Cannici v. Vill. of Melrose*

---

[7] Defendants do not move to dismiss Count II, Plaintiffs' claim that Defendants retaliated against them for engaging or otherwise participating in union activity, other than seeking to dismiss that count against Defendant Coutre.

*Park, Illinois*, 262 F. Supp. 3d 591, 594 (N.D. Ill. 2017), *aff'd sub nom. Cannici v. Vill. of Melrose Park*, 885 F.3d 476 (7th Cir. 2018). *See also Kasak v. Vill. of Bedford Park*, 574 F. Supp. 2d 858, 861-62 (N.D. Ill. 2008) (dismissing procedural due process claim where adequate review available under Illinois Administrative Review Act).

Plaintiffs rely on *Ryan v. Illinois Dep't of Child. & Fam. Servs.*, 185 F.3d 751 (7th Cir. 1999) and *Pugel v. Bd. of Trustees of Univ. of Illinois*, 378 F.3d 659 (7th Cir. 2004). However, neither case involved administrative review under the Illinois Administrative Review Law. Indeed Plaintiffs did not respond to Defendants' argument, citing *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530 (7th Cir. 2008), that the Administrative Review Law provides adequate remedies and requires dismissal of this claim. (Dkt. 49 at 4-5). *See G & S Holdings*, 697 F.3d at 538 (in response to plausible reasons to dismiss a complaint, judges "are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

Count III is dismissed with prejudice.

### 5. Conspiracy to Retaliate (Count IV)

Plaintiffs allege that Defendants reached an agreement amongst themselves to retaliate against the Plaintiffs for speaking out on matters of public concern and for organizing and participating in a union. Am. Compl. ¶¶ 95, 102. Defendants argue that this claim is insufficiently pled. However "[t]here is no heightened pleading standard for conspiracy claims: It is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant

has notice of what he is charged with." *Sanchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693, 705 (N.D. Ill. 2020) (cleaned up). *See also Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) ("Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy.").

The allegations in the complaint meet this standard. It can be inferred at this stage that Defendants conspired to retaliate against Plaintiffs for speaking out and for organizing and participating in a union. The complaint contains much more than a bare conclusion that there was a conspiracy. *See* Am. Compl. ¶¶ 31-53, 62-66. *Cf. Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (complaint was "bereft of any suggestion, beyond a bare conclusion, that the...defendants were leagued in a conspiracy"). Defendants' criticism of the lack of specifics about the alleged conspiracy may play out during discovery but the allegations are sufficient for now. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 585 (7th Cir. 2021) ("we cannot expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information [ ]he could not access without discovery") (cleaned up).

### 6. Remaining Counts

Hoselton brings a state law retaliatory discharge claim against the Village (Count V) based on his filing suit with the Illinois Workers' Compensation Commission on July 5, 2018. Count VII seeks indemnification from the Village. Defendants do not move to dismiss these counts. They remain pending.

## IV.    Conclusion

For the stated reasons, the motion to sever or dismiss [48] is denied and the motions to dismiss [46, 49] are granted in part and denied in part. Count III is dismissed with prejudice. Defendants Rob Lyons, Frank Caldario, Joseph Zangara, James Fowler, and Michael Coutre are dismissed with prejudice. Plaintiffs' surviving claims are: the § 1983 First Amendment claims (Counts I and II), § 1983 conspiracy claim (Count IV), the administrative review claim (Count VI), and state law claims in Counts V and VII.

E N T E R :

Dated: November 22, 2021

_____

MARY M. ROWLAND
United States District Judge

20