UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DON PRESTON, *et al.*, | ) | |
| | ) | No. 20 CV 4272 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| DAVID WIEGAND, *et al.*, | ) | |
| | ) | November 3, 2022 |
| Defendants. | ) | |

### MEMORANDUM OPINION and ORDER

Before the court is Defendants' motion to compel and to clarify Plaintiffs' alleged "garden-variety" emotional injuries. Defendants ask the court to compel additional deposition testimony regarding topics that Plaintiffs assert are protected by "the union-member privilege" and to set guidelines as to evidence Plaintiffs may use to support their damage claims for "garden-variety" emotional distress at trial. For the following reasons, the motion is granted in part, denied in part without prejudice, and denied in part with prejudice:

### Background

In this First Amendment retaliation case, Plaintiffs are former employees of the Village of Crestwood ("Crestwood") Police Department who allege that Defendants wrongfully terminated their employment as retribution for their efforts to unionize with the Illinois Council of Police ("ICOPS"). Plaintiffs are suing Crestwood and Crestwood's mayor, chief of police, and supervisory officers in the Crestwood Police Department. This case also occurs against the backdrop of a dispute

pending before the Illinois Labor Relations Board ("ILRB") between ICOPS and Crestwood in which ICOPS has alleged unfair labor practices. This motion pertains to Defendants' efforts to discover certain of Plaintiffs' medical records and conversations with ICOPS representatives.

Plaintiffs allege emotional distress damages of "the 'garden-variety' type and nothing more." (R. 124, Pls.' Resp. at 5.) During discovery Defendants issued document requests seeking "[a]ny and all Documents, including medical records, showing or relating to the physical or mental condition of each of the Plaintiffs prior to, at the time of, or subsequent to the allegations contained in Plaintiffs' Amended Complaint." (R. 119, Defs.' Mot. at 3.) Plaintiffs objected to these requests as irrelevant and not proportional to the needs of case. (Id.) Defendants then sought to clarify the emotional injuries claimed by Plaintiffs by asking them to elaborate in their depositions. Defendants did not submit the exact deposition testimony at issue to protect Plaintiffs' privacy, (see id. at 11 n.4), but Defendants report:

> certain Plaintiffs testified regarding past mental health treatment, or that they experienced insomnia, weight loss, high blood pressure, throwing up at night, emotional injuries that are ongoing because Crestwood is "still in the back of my mind," assertion of "PTSD," fear of performing duties of their current law enforcement jobs, leaving Crestwood "still, haunts me and messes with me, my stomach," that a plaintiff was the "perfect victim," and is a "damaged, broken person."

(Id. at 11.) In light of such testimony, Defendants seek to compel Plaintiffs to disclose the evidence on which they will rely to support their "garden variety" emotional distress damage claims.

Defendants also seek to learn more about communications between Plaintiffs and ICOPS—particularly those identified in Plaintiffs' Amended Complaint and in

2

affidavits submitted to the ILRB. To that end, Defendants' document request Nos. 5 and 7 seek "any Communication by and between the Plaintiffs and [ICOPS]," as well as "[a]ll documents or other tangible things resulting in Plaintiffs['] association with ICOPS, including all meeting minutes and agendas for all union negotiation meetings between ICOPS and the Village of Crestwood." (Id. at 3.) Plaintiffs objected to these requests in part based upon a so-called "union-member" privilege but produced documents notwithstanding the objection. (Id.) It is unclear whether Plaintiffs withheld any responsive documents based upon such privilege.[1]

Following these productions, Defendants deposed Plaintiffs Don Preston, Robert Hoselton, Gilbert Hueramo, Joe Cortesi, and Eric Chmura. At these depositions, Defendants asked Preston, Hoselton, and Hueramo about their meeting with ICOPS, as described in paragraph 26 of the Amended Complaint. (Id. at 4-5 & Exs. A-C.) In this paragraph, Plaintiffs allege that "[o]n June 27, 2019, Plaintiffs Preston, Hueramo, and Hoselton, met with an officer of [ICOPS] to discuss the unionization process for [Crestwood's] full-time and part-time police officers." (R. 43, Am. Compl. at ¶ 26.) All three Plaintiffs refused to answer these questions on the advice of their attorney after their attorney objected based on the union-member privilege. (R. 119, Defs.' Mot. at 4-5 & Exs. A-C.) Similarly, Defendants asked Cortesi and Chmura about statements in their affidavits, which they submitted as part of the ILRB proceeding against Crestwood. Cortesi attested in his affidavit that "Gil

---

[1] If Plaintiffs withheld any documents based on such privilege, Rule 34 requires them to say so in their responses to the document requests and to submit a privilege log.

Hueramo, Mike Hickman and I met with Rich Bruno, Vice President of the Illinois Council of police Union for representation," (id. Ex. D ¶ 9), but Cortesi refused to answer deposition questions about this statement after his attorney claimed a union-member privilege, (id. at 6 & Ex. E). Lastly, Chmura attested in his affidavit that he felt "intimidated and uncomfortable" during a conversation with Defendant Richard Wyman regarding a petition to remove ICOPS representation. (Id. Ex. F ¶ 16.) Defendants asked whether Chmura used the words "intimidated and uncomfortable" when "talking with representatives of ICOPS" or if those words "were placed in the affidavit that [he] ultimately signed." (Id. at 6 & Ex. G.) Again, his attorney objected based on the union-member privilege and Chmura refused to answer. (Id.)

## Analysis

Defendants seek a court order: (1) providing for second depositions of Preston, Hueramo, Hoselton, Cortesi, and Chmura "within 28 days on the limited issue regarding any communications/discussions with union representatives"; (2) requiring Plaintiffs to "produce all documents requested in Defendants' Production Request [Nos.] 5 and 7" withheld as union-member privileged along with a privilege log identifying any documents for which Plaintiffs claim a privilege; and (3) "prohibiting Plaintiffs from offering any testimony regarding symptoms, conditions, and past medical or psychological treatment based on Plaintiffs claiming 'garden variety' . . . emotional injuries." (R. 119, Defs.' Mot. at 12.) The court first examines the emotional distress issue, then analyzes the assertions of union-member privilege.

4

A.     **Emotional Distress Claims**

The court denies the motion on the "garden variety" emotional distress issue because Defendants' request to limit Plaintiffs' trial testimony is premature and additional discovery into Plaintiffs' medical records is unnecessary. Defendants argue that Plaintiffs' deposition testimony extended beyond "negative emotions" to various "symptoms or conditions," thereby taking Plaintiffs' trial testimony out of the realm of mere "garden variety" emotional injuries. (R. 119, Defs.' Mot. at 9-11.) As such, Defendants ask the court to exclude any testimony at trial regarding symptoms and conditions, or in the alternative to compel Plaintiffs to produce "all medical records." (Id. at 11.)

To the extent Defendants ask the court to exclude testimony from presentation at trial, the court agrees with Plaintiffs that Defendants' motion is akin to a motion *in limine*. (See R. 124, Pls.' Resp. at 5.)  But fact discovery in this case is ongoing, the court has not yet set a schedule for raising and briefing motions *in limine*, and the referral to this court extends only to issues regarding settlement and discovery. (See R. 80.) As such, Defendants' motion in this respect is denied without prejudice.

Insofar as Defendants seek to compel Plaintiffs to produce their medical records, the court finds such request unnecessary. Under Federal Rule of Civil Procedure 26(b)(1), Defendants have a right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts generally agree that mental health evidence is relevant to claims of emotional distress. *See Vann-Foreman v. Ill. Cent. R.R. Co.*,

5

No. 19 CV 8069, 2020 WL 6262361, at *3 (N.D. Ill. Oct. 23, 2020) (citing *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006)). However, a plaintiff can control the potential disclosure of his private mental health history by choosing to limit evidence to "garden variety" emotional damages. *See Kelly v. Village of Lemont*, No. 17 CV 8462, 2022 WL 483019, at *1-2 (N.D. Ill. Feb. 16, 2022). So long as Plaintiffs limit their trial testimony to "the negative emotions that [they] experienced . . . as the intrinsic result of the defendant's alleged conduct, but not the resulting symptoms or conditions that [they] might have suffered," Plaintiffs' privacy interests in their medical records outweigh any probative value those records may have in the case. *Valdez v. Lowry*, No. 18 CV 5434, 2021 WL 5769533, at *4 (N.D. Ill. Dec. 5, 2021) (internal quotations omitted).

Here, Defendants argue that Plaintiffs' deposition testimony demonstrates that Plaintiffs intend to go beyond negative emotions and discuss symptoms or conditions in their trial testimony. (R. 119, Defs.' Mot. at 11.) However, that is not necessarily so because Plaintiffs are free to answer questions posed to them the way they see fit without limitations. Plaintiffs also make clear in their response that their claims for emotional distress damages involve "the 'garden-variety' type and nothing more." (R. 124, Pls.' Resp. at 5.) The court takes them at their word. Defendants' motion as to this issue is therefore denied with prejudice.

**B.     Union-Member Privilege**

The motion is granted as to this issue because Plaintiffs failed to meet their burden of demonstrating that any "union-member" privilege applies in this case.

6

Plaintiffs argue that the court should recognize the union-member privilege created by Illinois statute and expand its application to include the communications with ICOPS representatives at issue here. (R. 124, Pls.' Resp. at 1-4 (citing 735 ILCS 5/8-803.5).) However, this court declines to find that the union-member privilege has any force in this federal case or that such privilege would protect the communications at issue.

Courts construe evidentiary privileges narrowly because they impede the search for truth and "run counter to the public's right to every person's evidence." *Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020). As such, the proponent of a privilege has the burden of establishing that it applies. *Id.* Federal common law governs assertions of privilege for claims arising under federal law, *see Hamdan v. Ind. Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018), but state law governs in civil cases where "state law supplies the rule of decision," Fed. R. Evid. 501. However, the Federal Rules of Evidence direct courts to interpret the common law "in the light of reason and experience." *Id.* Thus, the Rules "direct[ ] federal courts to continue the evolutionary development of testimonial privileges." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (internal quotations omitted). Federal courts considering new evidentiary privileges must evaluate on a case-by-case basis whether the proposed privilege: (1) is "rooted in the imperative need for confidence and trust"; (2) serves "public ends"; (3) has "significant public and private interests supporting recognition of the privilege" that

7

outweigh "the likely evidentiary benefit that would result from the denial of the privilege"; and (4) has been widely adopted among the states. *Id.* at 8, 10-15.

Plaintiffs did not explain why the union-member privilege they assert should govern in this case based upon these applicable legal standards. Instead, they make the unsupported assertion that the Illinois union-member privilege should apply under Federal Rule of Evidence 501's state law rule-of-decision exception. (See R. 124, Pls.' Resp. at 3.) But Plaintiffs' First Amendment retaliation case clearly arises under federal law, and the federal common law of privileges governs even with respect to Plaintiffs' supplemental state law claims. *See Bell v. Vill. of Streamwood*, 806 F. Supp. 2d 1052, 1055 (N.D. Ill. 2011). As such, Plaintiffs were required to explain why the *Jaffee v. Redmond* factors weigh in favor of federal common law adopting Illinois's union-member privilege. They have not done so here. Rather, Plaintiffs quote the decision in *Bell v. Village of Streamwood* to argue that "[a]s with the attorney-client privilege, there is a strong interest in encouraging an employee accused of wrongdoing to communicate fully and frankly with his union representative, in order to receive accurate advice about the disciplinary process." (R. 124, Pls.' Resp. at 4 (quoting *Bell*, 806 F. Supp. 2d at 1056).) But *Bell* recognized a limited union-member privilege in the context of "anticipated or ongoing disciplinary proceedings." *Bell*, 806 F. Supp. 2d at 1056. The union communications at issue here did not occur in the context of a disciplinary proceeding, and Plaintiffs make no effort to explain why *Bell*'s reasoning should apply to conversations related to Plaintiffs' efforts to unionize.

8

Furthermore, as Defendants rightly point out, the Seventh Circuit has never recognized a union-member privilege, *see Jenkins v. Bartlett*, 487 F.3d 482, 491 n.6 (7th Cir. 2007), and at least two cases in this district have declined to extend *Bell*, *see Wong v. Bd. of Educ. of Cmty. Consol.*, No. 11 CV 7357, 2013 WL 6571326, at *2-5 (N.D. Ill. Sept. 30, 2013); *Belcastro v. United Airlines*, No. 17 CV 1682, 2021 WL 1531601, at *2-5 (N.D. Ill. April 19, 2021). Plaintiffs try to distinguish those cases by arguing that Crestwood is both a defendant here and a respondent before the ILRB, and as such, disclosure of the disputed union communications "would seriously undermine the state law privilege" as applicable before the ILRB. (R. 124, Pls.' Resp. at 5.) But this argument makes no serious attempt to engage with the reasoning in any of the cited union-member privilege cases or satisfy the *Jaffee* factors. Additionally, Plaintiffs have not explained why this court should prioritize the theorized impact on the operation of a state law privilege in a state adjudication over the rights of Defendants in this action to discover information relevant to their defense.

Finally, the court notes that even if it were to adopt the union-member privilege exactly as written in Illinois statute, Plaintiffs still have not shown that the privilege would protect the communications in question. The statute in question protects "[1] a union agent [2] during . . . or after . . . [the] representative relationship with the bargaining unit member," from disclosing "[3] any information he or she may have acquired in attending to his or her professional duties or while acting in his or her representative capacity." 735 ILCS 5/8-803.5. Here, Plaintiffs are not union

9

agents and they have not demonstrated that they had a representative relationship with ICOPS at the time of any of the communications at issue. Accordingly, Defendants' motion to compel as to this issue is granted.

## Conclusion

For the foregoing reasons, Defendants' motion to compel and to clarify is granted in part, denied in part without prejudice, and denied in part with prejudice. Plaintiffs are ordered to produce any documents responsive to Defendants' Production Request Nos. 5 and 7 that they previously withheld as union-member privileged, if any. If none, they are to so state. Defendants may then re-depose Preston, Hueramo, Hoselton, Cortesi, and Chmura on the questions they initially refused to answer based on a union-member privilege and may pursue any follow-up or related questions. Additionally, Plaintiffs must reimburse Defendants any court-reporter attendance fees associated with this second round of depositions.

ENTER:

_____
**Young B. Kim
United States Magistrate Judge**