## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DON PRESTON *et al*,

Plaintiffs,

v.

DAVID WEIGAND *et al.*,

Defendants.

Case No. 20-cv-4272

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Hoselton seeks administrative review of the June 19, 2020 decision of the Village of Crestwood Board of Fire and Police Commissioners ("BOFPC" or "Board") terminating his employment. Hoselton requests this Court to reverse that decision and order that he be reinstated to his full-time position as a police officer. Defendants BOFPC and Chief of Police David Weigand respond that there is no basis for reversing the BOFPC's decision. For the reasons explained below, Plaintiff's request for reversal of the Board's decision [103] is denied.

### I.    Background[1]

Starting in February 2011, Plaintiff Hoselton was employed by the Village of Crestwood Police Department ("Village") as a part-time officer. Am. Compl. at ¶ 8. On November 7, 2013, Hoselton became a full-time officer and was later promoted to Corporal. *Id*. In July 2020, Hoselton and four other former Village police officers filed

---

[1] The facts are taken from the administrative record ("R.", Dkt. 64-1) and the Amended Complaint ("Am. Compl.", Dkt. 43). For the administrative record, the Court cites to the bates-stamped page numbers at the bottom of the pages indicated by "Administrative Record".

suit in this Court accusing Defendants of unlawfully terminating their employment following their attempts to unionize. This Court has previously denied Defendants' motion to sever, granting in part and denying in part their motions to dismiss. (Dkt. 60). As a result of that ruling, Plaintiffs' claims remaining in this case are: violation of the First Amendment, § 1983 conspiracy claim, state law claims of retaliatory discharge, indemnification, and the administrative review claim, brought by Hoselton only. Count VI of the Amended Complaint is Hoselton's request for judicial review of the BOFPC decision under the Illinois Administrative Review Act, 735 ILCS 5/3-101.

On October 22, 2019, Chief Weigand filed disciplinary charges against Hoselton before the BOFPC. R. 56. In the amended charges, Weigand alleged that Hoselton violated several Village policies between April 2018 and February 2019, and requested that the Board discharge Hoselton from the police department. *Id*. at 211–222. The charges against Hoselton were brought in eight counts: Obstruction of Investigation/False Statement; Use of Force; Failure to Report/ Notify Supervisor of Use of Force; Failure to Make Video Recording of Use of Force Incident; Unauthorized Use of the Law Enforcement Agencies Data System (LEADS); Single Car Collision; Leaving Work Without Proper Notification/Permission; and Violating Direct Order. *Id*.

The Board held a three-day hearing in March 2020. On June 19, 2020, in a 16-page decision, the Board issued its Findings and Decision, terminating Hoselton's employment. R. 796–811. The Board categorized the charges brought against Hoselton as: (1) misconduct related to Hoselton's use of LEADS (Charges 1 and 5), (2)

a use of force incident involving Hoselton and a prisoner (Charges 2, 3, and 4), and (3) three additional infractions involving a car accident, leaving his shift early without proper notification, and violating a direct order from the Police Chief (Charges 6, 7 and 8). R. 797. As explained further below, this Court's review focuses on the first two incidents.

## II.    Analysis

Hoselton argues that the BOFPC's decision is clearly erroneous and against the manifest weight of the evidence for several reasons including that the evidence and testimony at the hearing showed that he did not commit an offense warranting termination. The Board responds that the BOFPC's decision was supported by the weight of the evidence and Chief Weigand responds that it was not against the manifest weight of the evidence and should not be reversed.[2] The parties initially disagree on the relevant standard of review, so the Court begins its analysis there.

### a.  Standard of Review

The Illinois Administrative Review Act, 735 ILCS 5/3-101 (the "Act"), establishes procedures for seeking judicial review of a final administrative ruling. Under the Act, a court is authorized to review "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101. On review the court's decision:

> shall extend to all questions of law and fact presented by the entire
> record before the court. No new or additional evidence in support of or

---

[2] The Board and Chief Weigand filed separate responses but also incorporate each other's responses. (Dkts. 113, 114).

in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct.

*Id*. § 5/3-110. Thus, a court considers only the evidence submitted in the administrative hearing. *Marconi v. Chicago Heights Police Pension Bd.*, 870 N.E.2d 273, 292 (Ill. 2006).

As the Illinois Supreme Court explained, "[t]he applicable standard of review— which determines the extent of deference afforded to the administrative agency's decision—depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact." *Id*. Rulings on questions of fact are reversed only if they are against the manifest weight of the evidence, while the clearly erroneous standard applies if the review involves a mixed question of law and fact. *Id*. at 293. Defendants ask the Court to apply the former in this case, Hoselton argues for the latter.

In courts' review of a decision discharging an employee, courts follow a two-step process: at the first step, they ask "whether an agency's findings of fact are contrary to the manifest weight of the evidence [and] [a]t the second step, courts analyze whether those findings of fact provide a sufficient basis for [the agency's] conclusion that cause for discharge exists." *Bless v. Cook Cnty. Sheriff's Off.*, No. 13 C 4271, 2020 WL 4437666 at *2 (N.D. Ill. Aug. 3, 2020) (cleaned up); *see also Marzano v. Cook Cnty. Sheriff's Merit Bd.*, 920 N.E.2d 1205 (2009); *Illinois Dep't of Hum. Servs. v. Porter*,

921 N.E.2d 367 (Ill. App. 2009).[3] Thus generally in discharge cases, the manifest weight of the evidence standard applies.

Regardless of which standard is applied, the Act requires that "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110. Furthermore, "[i]t is within *the Board's* province to assign the appropriate weight to the evidence, resolve conflicts presented by it, and determine the credibility of the witnesses." *Scatchell v. Bd. of Fire & Police Commisioners for Vill. of Melrose Park*, 2022 IL App (1st) 201361, ¶ 36 (Ill. App. 2022) (emphasis added).

The appropriate standard to apply here is the manifest weight of the evidence standard. Moreover, under either standard, the Court does not find reversal of the Board's decision is warranted. The Board's findings of fact are not against the manifest weight of the evidence nor is the Court left with the definite and firm conviction that the Board made a mistake.

### b. BOFPC Findings

Defendants argue, and Hoselton does not dispute, that under Illinois law, an officer's violation of even one rule may be sufficient for discharge. (Dkt. 113 at 32, Dkt. 114 at 35); *see e.g. Siwek v. Police Bd. of City of Chicago*, 872 N.E.2d 87, 90 (Ill. App. Ct. 2007) ("An officer's violation of a single rule has long been held to be a sufficient basis for termination."); *Alexander v. Johnson*, 2020 IL App (1st) 200500-

---

[3] The cases relied on by Hoselton, *AFM Messenger Serv., Inc. v. Dep't of Emp. Sec.*, 763 N.E.2d 272 (Ill. 2001) and *Cinkus v. Vill. of Stickney Mun. Officers Electoral Bd.*, 886 N.E.2d 1011 (Ill. 2008), as modified (Apr. 23, 2008), do not support his position on this issue as they did not involve a court reviewing an agency decision discharging or disciplining an employee.

U, ¶ 50 (Ill. App. Ct. 2020) (same). Thus, the Court addresses the Board's findings related to the LEADS violations and the use of force incident and does not address the remaining charges against Hoselton.

### i. Charges 1 and 5

Charges 1 and 5 concern Hoselton's use of LEADS, which is a computer data system governed and monitored by the Illinois State Police. R. 798. The Crestwood Police Department and LEADS policies prohibit using LEADS for non-law enforcement purposes. *Id.*

Charge 5 alleges that in May 2018 Hoselton used LEADS in an unauthorized manner to access his own criminal history and by using another officer's login. *Id.* at 218–19. Charge 1 alleges that Hoselton made false statements and obstructed an internal investigation following the unauthorized use of LEADS. *Id.* at 211–13. The Board determined that on or about July 11, 2018, Hoselton told investigating officers that he ran his own name using Officer Van Witzenburg's computer and did not want Van Witzenburg to be in trouble. R.798. Several months later, on March 26, 2019, Hoselton stated during the investigation that Van Witzenburg had run Hoselton's name through LEADS but Hoselton would "take the hit". *Id.* at 212. In its findings, the Board concluded that the allegations in Charges 1 and 5 were clearly proven, and Hoselton had violated the department policies relating to standards of conduct (Policy 321), Information Technology use (Policy 322) and General Order 07-13. *Id.* at 802.

As to Charge 5, Hoselton does not dispute that he used LEADS for an unauthorized purpose. According to Hoselton, he "has never denied running his name

6

through LEADS using Officer Van Witzenburg's log in and password", and "[h]e took ownership of the policy violation." (Dkt. 103 at 33). Nevertheless, he contends that the Board's finding is against the manifest weight of the evidence because (1) he was not aware of the investigation into his LEADS usage when he admitted he "messed up" and (2) other officers, namely Commander Spencer, also used LEADS for personal purposes and did not face any repercussions. *Id*. These arguments are not convincing.

First, it is immaterial whether Hoselton was aware of the internal investigation when he made his statements. He does not explain why his knowledge of the investigation is material to the Board's finding that he violated the department policies. Similarly, although Hoselton argues that Spencer used LEADS for personal purposes with impunity, this does not demonstrate that the Board erred in finding that *Hoselton* violated department policies. For the court to consider a difference of discipline of another officer in the context of an administrative review would require a showing that the two individuals were involved in a "single, identical, 'completely related' case." *Siwek*, 872 N.E.2d at 90. Hoselton does not make this argument, nor could he. Spencer's use of LEADS arose after Chief Weigand authorized Spencer's use in order to try to find his missing grandmother. R. 453.[4] Moreover, "cause for discharge can be found regardless of whether other employees have been disciplined differently." *Launius v. Bd. of Fire & Police Comm'rs of City of Des Plaines*, 603 N.E.2d 477, 487 (1992).

---

[4] Hoselton contends that Spencer's testimony about running an inquiry about his grandmother "is not credible." (Dkt. 103 at 34). It is well-settled, however, that the court does not "make independent determinations of credibility." *Illinois Dep't of Hum. Servs.*, 921 N.E.2d at 383.

As to Charge 1, the Board found that Hoselton's "false statements regarding the LEADS investigation would implicate the *Brady* rule," meaning that "the police department must notify the State's Attorney's Office of the officer's lie because it reflects on his credibility as a witness." R. 801-02. Hoselton does not address this argument in his briefs. He maintains, however, that he did not make statements that were "intentionally misleading or untruthful," and "[a]t worst, [his statement was] simply a misinterpretation." (Dkt. 103 at 38).

As the Board explained in its decision (R. 801–02) and as Illinois courts have stressed, "as the guardians of our laws, police officers are expected to act with integrity, honesty, and trustworthiness." *Sindermann v. Civil Service Comm'n*, 657 N.E.2d 41, 50 (1995). The Board found Hoselton's misrepresentations to be intentional. It found that Hoselton admitted to knowing that running a personal inquiry in LEADS was in violation of policy and admitted to telling two different versions of events regarding the LEADS incident. R. 799. The Board found his "level of deception" was "two-fold." *Id*. at 800. As a result, the Board determined Hoselton "intentionally provided false information" to cover up facts and "derail the investigation." *Id*. at 801. The Court sees no reason to reverse the Board's finding. It is the Board's role to "weigh[] to the evidence, resolve conflicts presented by it, and determine the credibility of the witnesses." *Scatchell*, 2022 IL App (1st) 201361, ¶ 36.

Hoselton also asks the Court to speculate about Van Witzenburg asserting the Fifth Amendment: "One has to wonder why Van Witzenburg would assert the Fifth Amendment during a disciplinary hearing," and says the Court should compare that

to Hoselton not asserting the Fifth Amendment during the hearing. (Dkt. 103 at 38). The Court will not speculate, nor will it weigh witness testimony. *See Marconi*, 870 N.E.2d at 297; *Bless*, 2020 WL 4437666, at *2 (a court reviewing an agency decision must "refrain from reweighing the evidence.").

Finally, Hoselton argues that Policy 322 and General Order 07-13 were not part of amended charges. Not so. Policy 322 was part of the amended charges in Charge 5. R. 219. And General Order 07-13 was contained in Charge 1. *Id*. at 213.

Thus, the Court finds that the Board's decision with regard to Charges 1 and 5 are not against the manifest weight of the evidence.

### ii. Charges 2, 3 and 4

These charges concern a use of force incident on April 7, 2018 when a prisoner who had been arrested for driving under the influence of alcohol was secured in a cell at the Crestwood Police Department. R. 803, 261, 351. Hoselton was the supervisor on the shift. *Id*. at 803, 261, 610–19. According to the Board's findings, Hoselton removed the sleeping prisoner from the cell to be processed. Hoselton initiated physical contact, grabbing the prisoner, and pulling him to his feet. *Id*. at 803. Hoselton and the prisoner had a physical altercation along with other assisting subordinate officers. *Id*. On two occasions, Hoselton held the prisoner's head on the ground. R. at 633, 635. The prisoner was returned to his cell without being processed and complained of pain; an ambulance was called, and the prisoner received medical aid. R. at 803.

As a result of this incident, Hoselton was charged with an unnecessary initiation of use of force contrary to the Department's use of force policy (Policy 300); failure to complete a "Use of Force Report" or notify his supervising officer about the use of force contrary to Policies 300 and 323; and failure to make a video recording of the incident contrary to Department Policy 424 and General Order 16-02.[5] The Board found that the circumstances known to Hoselton at the time of the cell extraction did "not justify the decisions and actions taken by [Hoselton] to forcefully extract the prisoner and try to process him." R. 804.

Hoselton argues that the behavior at issue was not his use of force during the processing, but his *decision* to remove the detainee from a cell for processing, and the cited policy sections do not apply to supervisor's decision to remove a detainee. The Board found his conduct in performing the cell extraction violated Policy 300, Policy 321, and General Order 07-13. However, as Defendants point out, Section 300.3 of the Use of Force policy, and Section 321.5.9 of the Conduct policy, address the decision to remove a detainee (*e.g.* "When determining whether to apply force….", Section 300.3).[6] The Board's decision encompassed both Hoselton's conduct and decision.

---

[5] Hoselton additionally argues that the Board exceeded its authority when it found him in violation of General Order 07-13 because it was not in effect at the time of the alleged misconduct--it had been superseded by Policy 321. However, the record shows that the Board cited to both General Order 07-13 *and* Policy 321. R. 804–05. And as Defendants point out, there is no substantive difference between that order and that policy. (Dkt. 114 at 17).

[6] Hoselton asserts that the Board failed to identify a specific subsection of the policy that he violated. The Court does not agree that this precludes meaningful judicial review, as the Board provided all of the Sections and Orders that it found were violated and detailed the factual circumstances surrounding the charges and its reasoning.

As before, Hoselton argues other officers involved in the incident were not investigated or disciplined. (Dkt. 103 at 17). However, Hoselton does not dispute that he was in charge of the shift at the time of the incident, and he initiated the cell extraction. Hoselton also stresses that he used "sound judgment" in this situation. (Dkt. 103 at 16). But it is not for this Court to reweigh or reassess the evidence: it is "the Board's function, as the finder of fact, to assess the credibility of the documentary information and the testimony of the witnesses and to determine the appropriate weight to be given the evidence." *Marconi*, 870 N.E.2d at 297; *see also Jones v. Peoria County Sheriff's Merit Comm'n*, 619 N.E.2d 830, 887 (1993) (the court on review cannot "substitute its judgment for that of an agency.").

As to Charge 3, Crestwood policy requires the documentation of use of force specifically on a Use of Force Report. R. 804. The Board found it undisputed that Hoselton failed to submit such a report. *Id*. at 805. Hoselton concedes he did not complete this report, (Dkt. 103 at 21), but argues he completed a general case report and it "makes no sense to require a form that is a supplement to a general case report." *Id*. But it is not for this Court to judge the department's policies. And the Board addressed Hoselton's contention that he "forgot", noting that he was a supervisor and in charge of approving numerous reports by other officers. R. 805.

For Charge 4, the Board found that Hoselton failed to use the handheld video recorder during the cell extraction as mandated by Crestwood department policy. R. 806. Hoselton argues that the CCTV video captured the incident, and it is

11

"nonsensical to require the preservation of a hand-held video recording." (Dkt. 103 at 29). This is not a basis to reverse the Board's factual findings.

### c. Cause for Discharge

Having determined that the Board's findings were not against the manifest weight of the evidence, the Court proceeds to the second prong of the review, to determine if the Board's findings of fact provide a sufficient basis for its conclusion that cause for discharge existed. *See Marzano*, 920 N.E.2d at 1208. "Cause" has been "judicially defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." *Dep't of Mental Health & Developmental Disabilities v. Civ. Serv. Comm'n*, 426 N.E.2d 885, 887 (1981) (cleaned up).

The Board, not the reviewing court, is in the "best position to determine the effect of an employee's conduct on the department." *Marzano*, 920 N.E.2d at 1208. "An administrative tribunal's finding of 'cause' for discharge is entitled to considerable deference and is to be overturned only if it is arbitrary and unreasonable or unrelated to the requirements of the service." *Allman v. Police Board*, 489 N.E.2d 929, 931 (Ill. App. 1986). This Court is thus "required to give the Board's determination of cause for terminating an officer considerable deference." *Rodriguez v. Weis*, 946 N.E.2d 501, 507 (Ill. App. 2011). And in reviewing a discharge decision, "we may not consider whether we would have imposed a more lenient disciplinary sentence" because the Court's review "is limited to a determination of whether the Board acted

unreasonably or arbitrarily by selecting a type of discipline that was inappropriate or unrelated to the needs of the service." *Siwek*, 872 N.E.2d at 90 (cleaned up).[7]

Hoselton's case involves numerous policy violations and the Board made well-supported determinations that the violations were clearly proven. Furthermore, given the fact that under Illinois law an officer's violation of a single rule can be a sufficient basis for termination and considering this Court's "limited power of review" *Rodriguez*, 946 N.E.2d at 506, the Court finds that Board's findings of fact supported its conclusion that cause for discharge existed.

### d. Hoselton's Sham Hearing Argument

In his reply brief Hoselton argues that his proceeding before the BOFPC was unfair. He contends that the Board ignored "ample evidence of wrongdoing by Weigand [] and his administrative and command staff," and questions the "integrity of the hearing", suggesting that he was a victim of a "sham" hearing. (Dkt. 122 at 2, 12). Essentially, he argues that the Board's decision was erroneous and not supported by the evidence.

To the extent that Hoselton is asserting a due process violation, his argument is not persuasive. Hoselton had a three-day hearing, was represented by counsel, had a full opportunity to present his case. The Board's decision showed it considered the evidence as set forth in its 16-page decision. *Moreover,* Hoselton's sham hearing

---

[7] The cases relied on by Hoselton to argue that the Board's decision is arbitrary and unreasonable are not factually similar to this case. For example, in *Christenson v. Board of Fire & Police Commissioners,* 404 N.E.2d 339 (Ill. App. 1980), a police officer used a police vehicle to address an emergency situation related to his horses. Unlike here, that case involved a single incident of misconduct.

argument is waived as it is both undeveloped and raised for the first time in his reply brief. *See Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are "underdeveloped, conclusory, or unsupported by law" may be waived); *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("arguments raised for the first time in [the] reply brief are waived because they leave no chance to respond."); *see also Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011).

In a final attempt to argue for reversal of the Board's decision, Hoselton highlights his community contributions and that his "employment and disciplinary history, up until the alleged violations, is impeccable." (Dkt. 103 at 44). The Court appreciates all of these positives but that does not require reversal of the Board's decision. *See Alexander*, 2020 IL App (1st) 200500-U, ¶ 50 (explaining that an agency need not give mitigating evidence sufficient weight to overcome a termination decision and finding that clean disciplinary history and achievement awards did not require overturning the Board's decision).

## III.    Conclusion

For the reasons stated, Plaintiff's request for reversal of the Board's decision terminating his employment [103] is denied. The Board's June 19, 2020 decision is affirmed.

E N T E R :

Dated: April 10, 2023

_____

MARY M. ROWLAND
United States District Judge